Dennis P. Conner, Bar No. 283
Keith D. Marr, Bar No. 5999
Gregory G. Pinski, Bar No. 5254
J.R. Conner, Bar No. 36402194
CONNER, MARR & PINSKI, PLLP
P. O. Box 3028
Great Falls, MT 59403-3028
Phone:  (406) 727-3550
Fax:  (406) 727-1640
Email:   dennis@mttrials.com
          keith@mttrials.com
          greg@mttrials.com
          jr@mttrials.com

Charles S. Lucero, Bar No. 2417
ATTORNEY AT LAW
615 Second Avenue North
Suite 200
Great Falls, MT 59401
Phone: (406) 771-1515
Fax: (406) 771-1146
Email:   charlie@charlielucero.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KODIAK BLAINE, DOUGLAS DARKO, CHRISTOPHER FLOWER, REYNOLDS HERTEL, KAREN LAPPI, APRIL POSEY, TERRI SEARSDODD, EDWARD NELSON, JON L. WILLIAMS, and EMILY HARO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs, | Cause No. CV-21-92-GF-BMM-JTJ<br><br>**SECOND AMENDED CLASS ACTIONCOMPLAINT AND JURY DEMAND** |

1

| | |
|---|---|
| vs.<br><br>BENEFIS HEALTH SYSTEM, INC.,<br>BENEFIS HOSPITALS, INC.,<br>BENEFIS MEDICAL GROUP, INC.,<br>KALISPELL REGIONAL MEDICAL<br>CENTER, INC., MAGELLAN<br>RESOURCE PARTNERS, LLC (a/k/a<br>"MEDEQUITY," "MEDEQUITY,<br>INC." AND "MEDEQUITY CORP."),<br>MEDEQUITY CORPORATION, and<br>DOES 1-50,<br><br>        Defendants. | |

COMES NOW, Plaintiffs Kodiak Blaine, Douglas Darko, Christopher Flower, Reynolds Hertel, Karen Lappi, April Posey, Terri Searsdodd, Edward Nelson, Jon L. Williams, and Emily Haro, individually and on behalf of all others similarly situated, by and through their attorneys, Conner, Marr & Pinski, PLLP, and for their Class Action Complaint against Defendants Benefis Health System, Inc. ("BHS"), Benefis Hospitals, Inc. ("BH"), Benefis Medical Group, Inc. ("BMG"), Kalispell Regional Medical Center, Inc. ("KRMC"), Magellan Resource Partners, LLC (a/k/a "MedEquity", "MedEquity, Inc.", and "MedEquity Corp.") ("Magellan"), MedEquity Corporation, and Does 1-50:

## **PLAINTIFFS**

1.    Plaintiffs Kodiak Blaine, Douglas Darko, Christopher Flower, Reynolds Hertel, April Posey, Terri Searsdodd, and Jon L. Williams are citizens of

2

the State of Montana, residing in Cascade County, Montana, within the Great Falls Division of the United States District Court for the District of Montana.

2.      Plaintiff Edward Nelson is a citizen of the State of Montana, residing in Lincoln County, Montana.

3.      Plaintiff Karen Lappi is a citizen of the State of North Dakota, residing in Williams County, North Dakota.

4.      Plaintiff Emily Haro is a citizen of the State of Texas, residing in Travis County, Texas.

## **DEFENDANTS**

5.      Defendant Benefis Health System, Inc., is a Montana not for profit corporation with its principal place of business in Cascade County, Montana.

6.      Defendant Benefis Hospitals, Inc., is a Montana not for profit corporation with its principal place of business in Cascade County, Montana.

7.      Defendant Benefis Medical Group, Inc. is a Montana not for profit corporation with its principal place of business in Cascade County, Montana.

8.      Defendant Kalispell Regional Medical Center, Inc. is a Montana not for profit corporation with its principal place of business in Flathead County, Montana.

9.      Defendant Magellan Resource Partners, LLC is a California limited liability company with its principal place of business in Los Angeles County, California.  Upon information and belief, Magellan Resource Partners, LLC operates

under several aliases and unregistered trade names "MedEquity", "MedEquity, Inc.", and "MedEquity Corp.", and it is not licensed to transact business in the State of Montana.

10.     Defendant MedEquity Corporation is a Delaware corporation incorporated on June 26, 2018.  MedEquity Corporation was dissolved by the Delaware Secretary of State on March 1, 2020, for non-payment of taxes. MedEquity Corporation was revived on January 13, 2022.  MedEquity Corporation is not licensed to transact business in the State of Montana.  MedEquity Corporation was previously identified as one of the unknown fictitious defendants below.

11.     The true names or capacities, whether individual, corporate, associated, affiliated, or otherwise of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Upon information and belief, each of the Defendants sued herein as a fictitious name is legally responsible in some manner for the events and happenings referred to herein, and Plaintiffs will seek leave of Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiffs.

## JURISDICTION AND VENUE

12.     Jurisdiction is asserted under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

4

13.     Jurisdiction is also asserted under 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the putative class is a citizen of a state different from any defendant and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.     Venue is proper in this Division under Local Rule 3.2(b)(1)(A) because the actions described occurred in this district and one or more plaintiff lives in this Division and District.

15.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367 because the state claim claims are related to the federal law claims giving rise to federal question jurisdiction.

## FACTUAL ALLEGATIONS

16.     At all times relevant hereto, Plaintiff Terri Searsdodd was insured under a health insurance policy issued by Blue Cross Blue Shield.  Searsdodd was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

17.     At all times relevant hereto, Plaintiff Kodiak Blaine was insured under Medicaid.  Blaine was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

18.    At all times relevant hereto, Plaintiff Karen Lappi was insured under Blue Cross Blue Shield.  Lappi was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

19.    At all times relevant hereto, Plaintiff Christopher Flower was insured under Medicare.   Flower was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

20.    At all times relevant hereto, Plaintiff Reynolds Hertel was insured under Medicaid.  Hertel was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

21.    At all times relevant hereto, Plaintiff Douglas Darko was insured under Medicare.  Darko was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

22.    At all times relevant hereto, Plaintiff April Posey was insured under Medicaid.  Posey was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

23.    At all times relevant hereto, Plaintiff Edward Nelson was insured under Medicare.  Nelson was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

24.     At all times relevant hereto, Plaintiff Jon L. Williams was insured under Medicare.  Williams was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

25.     At all times relevant hereto, Plaintiff Emily Haro was insured under private insurer, Evolution Healthcare.  Haro was injured in an automobile collision and received medical care from one or more of Defendants BHS, BH, BMG, or KRMC.

26.     Defendants BHS, BH, BMG, and KRMC are health care providers or health care facilities within the meaning of § 71-3-1114, MCA.

27.     Defendant Magellan Resource Partners, LLC is a member-managed limited liability company registered with the California Secretary of State on December 17, 2014.  The agent for service of process is Mark Rutherford Hess (mhess1100@gmail.com), 718 Hermosa Street, South Pasadena, CA 91030.  The entity address on file with the California Secretary of State is 1001 Fremont Street #1485, South Pasadena, CA 91031.  Upon information and belief, this entity address is a United States Post Office and the suite reference is actually a post office box. As detailed below, Magellan Resource Partners, LLC identifies a different entity address on its website, and this ambiguity makes its actual corporate location unclear.

7

Mr. Hess executed Magellan Resource Partners, LLC's most recent annual report as a "partner" although the business is not a partnership. The type of business listed for Magellan Resource Partners, LLC through the California Secretary of State is "Healthcare Finance".

28.    Upon information and belief, Magellan Resource Partners, LLC conducts business under various aliases and fictional corporate names, including but not limited to "MedEquity," "MedEquity Corporation," and "MedEquity, Inc.".

29.    Upon information and belief, between March 1, 2020, and January 13, 2022, MedEquity Corporation was not a valid legal entity due to its administrative dissolution by the Delaware Secretary of State for non-payment of taxes. For nearly two years relevant to this case, MedEquity Corporation was not a valid legal entity, yet conducted business and engaged in alleged unlawful activities. Magellan Resource Partners, LLC was a valid legal entity during that time.

30.    Upon information and belief, as detailed herein, Magellan Resource Partners, LLC and MedEquity Corporation are alter egos under Montana law because they share common officers or directors; failed to comply with statutory requirements regarding corporate operations; engage in the same type of business; share addresses; share intellectual property; representations to third parties; undercapitalization; and other considerations.

8

31.     Upon information and belief, the Montana Secretary of State has not issued a certificate of authority for Magellan Resource Partners, LLC (a/k/a "MedEquity," "MedEquity Corporation," and "MedEquity, Inc.") or MedEquity Corporation to transact business in Montana under § 35-14-1502, MCA..

32.     Magellan Resource Partners, LLC ("MedEquity," "MedEquity Corporation," and "MedEquity, Inc.") and MedEquity Corporation transact business in Montana by, *inter alia*, acting as an agent to enforce medical liens in concert with Defendants BHS, BH, BMG, and KRMC.

33.     The website for Magellan Resource Partners, LLC (www.magellanrp.com) includes a separate webpage for MedEquity (www.magellanrp.com/medequity) which is identical (except for the interchangeable mention of "Magellan Resource Partners" and "MedEquity") in all material respects to the webpage for Magellan Resource Partners, LLC:



By the statements on its websites, Magellan Resource Partners, LLC and "MedEquity" share common "proprietary" technologies.

Both Magellan Resource Partners, LLC and "MedEquity" identify an identical business address, which differs from the principal place of business Magellan Resource Partners, LLC identified for the California Secretary of State and MedEquity Corporation listed with the Delaware Secretary of State:

| | |
|---|---|
| **MAGELLAN RESOURCE PARTNERS LLC**<br><br>DOWNTOWN LOS ANGELES<br>601 South Figueroa Street<br>Los Angeles, CA 90017 | **MEDEQUITY**<br><br>DOWNTOWN LOS ANGELES<br>601 South Figueroa Street<br>Los Angeles, CA 90017 |

The Figueroa at Wilshire Building where Magellan Resource Partners, LLC and "MedEquity" claim as their offices is a 52-floor tony office space in downtown

Los Angeles.  Upon information and belief, efforts to verify the tenancy of Magellan Resource Partners, LLC and "MedEquity" at this address were unsuccessful.

34.   "MedEquity" purportedly asserts statutory liens as an "authorized agent" or "administrative agent" for health care services rendered by Defendants BHS, BH, BMG, and KRMC.

35.   In its communications using Defendant BHS' logo, "MedEquity" describes itself as a "revenue cycle company that is the claims processor for third party liability claims only for Benefis Health. … MedEquity provides payer identification and lien generation services through its industry-leading 'Claims Cycle Management ('CLM')' product suite's Continuous Payer Identification capabilities."

36.   The "MedEquity" liens originate from addresses unassociated with Magellan Resource Partners, LLC or "MedEquity."  In one instance, the lien is signed by "James Gonzalez" who identifies himself on his facsimile as "John Anderson" with an address of 457 S. Marengo Avenue, Unit 15, Pasadena, CA 91101, telephone number of (470) 798-0318 and facsimile of (213) 839-6968 but with an email address of "james.gonzalez@medequityinc.com".  The listed address is a multi-tenant residence.  Upon information and belief, the phone number (470) 798-0318 used by "John Anderson" and "James Gonzalez" for "MedEquity" liens is listed to "Lillianne Yuli Gu" who also lives at the residential address used for

11

"MedEquity" liens.  In another instance, "MedEquity" identifies itself as then-non-existent "MedEquity Corporation" with an address at 1001 Fremont #1485, South Pasadena, CA 91031, which address is upon information and belief a United States Postal Service facility.  This address is the principal place of business listed with the California Secretary of State for Magellan Resource Partners, LLC and with the Delaware Secretary of State for MedEquity Corporation.  In another instance, "MedEquity" liens are asserted by "Debra Somerville" with a phone number of (310) 359-6188, and the automated answering machine indicates the number is for Magellan Resource Partners.  In another instance, "MedEquity" liens are sent by "Cynthia Gonzalez", but signed by "Ulises Gonzalez". This kaleidoscope of individuals and fictional entities all purportedly act as agents for and in concert with Defendants BHS, BH, BMG, and KRMC.

37.    The exact relationship between and among Defendants BHS, BH, BMG, KRMC, Magellan Resource Partners, LLC, and MedEquity Corporation is unknown except for the stated assertion that the sometimes fictional, non-legal business entity "MedEquity" is an "authorized agent" and "administrative agent" for the other defendants.   As further evidence of confusion, on certain lien communications from "MedEquity," the Benefis and KRMC logos are used with a facsimile header "Benefis Health System MVA/GL FTPL Processing" and "Kalispell Regional Healthcare MVA/GL FTPL Processing."

38.    Upon information and belief, Defendants BHS, BH, BMG, and KRMC have adopted a common practice and procedure when a patient involved in a motor vehicle accident or other third-party liability scenario presents for medical services, without a patient's knowledge or permission, these Defendants secretly code the "payer party" as "MedEquity" rather than (or in addition to) the health insurer, Medicaid, or Medicare.  In reality, "MedEquity" is not a "payer party" at all.  The following exemplar record illustrates how Defendant BHI unilaterally codes "MedEquity" as a "payer party" using the identical address as Benefis Hospital, Inc., P.O. Box 5096, Great Falls, MT 59403:



39.     In other words, a patient presents for medical care believing Defendants BHS, BHI, BMG, and KRMC will bill his or her health insurance, Medicaid, or Medicare, as the case may be, and the patient will receive whatever corresponding benefits are due under those insurance policies or benefit programs.  Rather than engage in this customary, expected, and anticipated practice, Defendants BHS, BHI, BMG, and KRMC code the bill to "MedEquity."

40.     This billing scheme Defendants hid from Plaintiffs and Class Members violates Defendants' own patient rights policies.   For instance, Defendants BH, BHS, and/or BMG represent to their patients that they will "bill your insurance company directly" and "submit charges for medical services to the insurance providers you specify":

# Hospital Billing With Convenience

To make the billing process as easy and convenient as possible, we bill your insurance company directly. We also provide you with a cost estimate of the remaining balance that you need to pay before you're discharged from the hospital. Through our insurance verification process, we're able to verify your eligibility and benefits and determine your financial responsibility before you receive services.

We encourage you to review your health insurance benefits and coverage so you know what to expect. If your hospital stay was unplanned, one of our health benefit advisors will visit you during your stay and give you a cost estimate. We're here to answer questions and assist you with insurance matters.

If you have questions about your bill, call us at (406) 455-3535, or complete a CONTACT FORM.

## Payment Process

Learn about your financial responsibilities after a hospital stay.

At the time of hospital registration, we submit charges for medical services to the insurance providers you specify. Depending on your insurance, you may need to pay a co-payment or deductible, and you may be asked to pay a portion of the bill as your share of the total cost.



42.    Defendants inform Plaintiffs and Class Members their health insurance, Medicaid, or Medicare will be billed and they will receive whatever corresponding benefits are due.  Plaintiffs and Class Members rely on those representations.  Yet, unbeknownst to Plaintiffs and Class Members, Defendants secretly and deceptively bill "MedEquity" for the medical services to collect exorbitant, unreasonable amounts from Plaintiffs and Class Members that they neither expect to pay nor legally obligated to pay.

43.     Nationally, the vast majority of healthcare revenue is generated through health insurance payments.  Health insurers contract with medical providers like Defendants BHS, BHI, BMG, and KRMC for the amount charged for services. Health insurance policyholders pay premiums for the benefit of receiving a contracted rate for healthcare as negotiated between the insurer and medical provider.

44.     Another source of healthcare revenue are government-funded insurance programs like Medicare and Medicaid.  Under these programs, the government sets the rates and medical providers choose whether to accept patients under these programs.  Defendants BHS, BHI, BMG, and KRMC accept patients with Medicare and Medicaid, and they are subject to the laws and regulations implementing those government programs.

45.     By accepting a health insurer's policyholders, Medicaid, and Medicare, medical providers receive the benefit of many more potential patients.

46.     Medical providers must maintain chargemasters.  Chargemasters are lists of procedures, drugs, tests, and other services offered by the provider and their corresponding price.  A medical provider can freely set its chargemaster prices. These chargemaster prices are frequently used for a medical provider's negotiation with health insurance companies.

An industry study published in the *Health Affairs Journal* reports for every additional dollar in the chargemaster prices, providers negotiated fifteen cents more from health insurance companies.  Another *Health Affairs Journal* study reveals that on average, medical provider chargemaster prices are 3.4 times the cost of services established by Medicare and some providers setting their chargemaster prices up to ten times the amount allowed by Medicare.

As a practical matter, chargemaster prices bear no relation to what a service actually costs or what is an economically reasonable price, but rather chargemaster prices are strategically inflated to elicit more money from insurers.  Montana courts have recognized that amounts billed by health care providers are "not a reliable or accurate indicator of the reasonable value of the services because they are unreasonably inflated and few patients ever actually pay the billed amount."  *Meek v. Dist. Ct.,* 2015 MT 130, ¶ 13, 379 Mont. 150, 349 P.3d 493 (quoting a district court's order regarding the admissibility of medical bills).

During 2021 Montana legislative hearings on SB251, which amended § 27-1-308, MCA, to prohibit parties injured by third-parties from recovering a provider's billed amount rather than the amount actually paid, the Montana Hospital Association testified: "If an injured party does file suit … and they have health insurance of some kind or government sponsored health coverage, the hospital is under a contractual agreement to accept whatever those entities pay them as payment

in full."  Throughout the hearing, the difference between the billed amount and paid amount was referred to as a "phantom" amount. Forrest Ehlinger, EVP and Chief Resource Officer at BHS, testified that BHS supports the "testimony that was previously provided by Montana Hospital Association" and that "Benefis favors the establishment of transparency surrounding settlements received in civil liability claims.  We also support the development of clear guidelines related to the handling of such claims."

In response to legislative questioning about providers like Defendants attempting to collect the amount billed rather than the contractual or statutory amount, Defendants' interest group took the position, "if … your insurance company, you know, made a payment, the hospital is not going to try and file liens against your home, they're not going to go and turn you over to debt collectors…"

In other words, Defendants' interest group argued to the legislature that injured parties should not be permitted to recover more than the amount paid to the medical providers, but now Defendants are filing liens to collect the "phantom" amount billed, which Plaintiffs cannot collect.

47.     In exchange for an increased level of patients and guaranteed payments, health insurance companies, Medicaid, and Medicare prohibit  Defendants BHS, BHI, BMG, and KRMC from "balance billing."  "Balance billing" is the difference between the medical provider's chargemaster price and the contractual price with a

health insurer or a regulatory price imposed by Medicaid and Medicare. Health insurers and the federal and state government prohibit "balance billing" to protect their insureds from a medical provider trying to collect the difference between the inflated chargemaster price and the contractually negotiated or regulatory imposed price. Health insurance companies prohibit "balance billing" through contractual provisions and require a medical provider to accept the contractually agreed upon terms as payment in full. Medicare and Medicaid providers like Defendants BHS, BHI, BMG, and KRMC are required by federal law to accept the payments from the government agencies as payment in full. *See* 42 U.S.C. § 1396a(a)(25)(C); 42 C.F.R. § 447.15; *see also* A.R.M. 37.85.406(11) ("Providers are required to accept, as payment in full, the amount paid by the Montana Medicaid program for a service or item provided to an eligible Medicaid member in accordance with the rules of the department. Providers must not seek any payment in addition to or in lieu of the amount paid by the Montana Medicaid program from a member or his representative, except as provided in these rules. . . . A provider may not bill a member for services as a private pay patient, if, prior to provision of services, the member informed the provider of Medicaid eligibility.").

48. To circumvent the contractual and regulatory prohibitions against "balance billing," Defendants BHS, BHI, BMG, and KRMC engaged Defendant Magellan and/or MedEquity Corporation to recover their inflated chargemaster

prices by filing medical liens against Plaintiffs and Class Members under *The Physician, Nurse, Physical Therapist, Occupational Therapist, Acupuncturist, Chiropractor, Dentist, Psychologist, Licensed Social Worker, Licensed Professional Counselor, Hospital, Optometrist, Naturopathic Physician, Podiatrist, Ambulance Service, Rehabilitation Facility, Long-Term Care Facility, and Outpatient Center for Surgical Services Lien Act*, codified at Mont. Code Ann. § 71-3-1111, *et seq.* (2019) (hereinafter the "Lien Act").

49.    Under its "MedEquity" billing scheme, instead of, or in addition to, submitting medical bills to the patient's health insurer, Medicaid, or Medicare, Defendants BHS, BHI, BMG, and KRMC enlist Defendant Magellan and/or MedEquity Corporation, operating under the sometimes various fictional "MedEquity" aliases to file medical liens, purportedly under the Lien Act. The liens assert the full, non-negotiated charges for the treatment provided, even though the insured patients have an enforceable, contractual or regulatory right to a lower, negotiated rate. The rates reflected in the "MedEquity" liens are the chargemaster prices, which far exceed Defendants BHS, BHI, BMG, and KRMC's negotiated reimbursement rates they would receive if the patient's medical bills were submitted to the health insurer or government provider and result in such patients paying more for services than they are contractually or legally required to pay.

50.     Under the Lien Act, Defendants may only recover on their medical liens for the "reasonable value of services."  Mont. Code Ann. § 71-3-1117.  As the Montana Supreme Court held in *Meek*, while reasonable value of services may include the amount a healthcare provider bills, an injured plaintiff is subject to a collateral source offset for any amounts paid by health insurers or government healthcare benefit programs.  Under the "MedEquity" billing scheme, however, Defendants reap a windfall by placing a lien for the inflated chargemaster price for services when an injured plaintiff's recovery is reduced by contractual or regulatory payments by health insurers, Medicaid, and Medicare (and, of course, those insurers have their own liens on the same recovery).  As Justice McKinnon concluded in her dissenting opinion in *Meek*, *supra,* ¶ 34: "[The plaintiff] did not incur liability for her providers' full bills because at the time the charges were incurred, her providers had already agreed to accept a certain amount from both Medicare and Blue Cross/Blue Shield in exchange for their services. . . . As a result of paying her premiums, [the plaintiff] obtained the benefit of medical services at a reduced rate."

Similarly, when a healthcare provider writes off its medical bills, this Court has ruled an injured plaintiff may not recover them.  *See Gibson v. United States,* No. CV-18-112-GF-BMM, 2020 WL 1677585, at *10 (D. Mont. Apr. 6, 2020), *aff'd* 2021 WL 6124759 (9th Cir. Dec. 27, 2021).  Yet, in that case, if the hospital filed a lien, the plaintiff would have received nothing and the hospital recovered a windfall.

It is well settled that due to collateral source restrictions, Plaintiffs and Class Members cannot recover more than the amount actually paid by a health insurer, Medicaid, or Medicare, yet Defendants reap a windfall by unlawfully using the Lien Act to recover more than they contractually or legally may receive.

51.     Defendants BH, BHS, and/or BMG advertise discounts for uninsured patients, "If you're uninsured we offer a 40 percent discount on your hospital bill."



8/31/2021                                    Billing & Insurance | Benefis Health System

**Uninsured Discounts and Policies**

Learn about discounts and policies for patients who are uninsured.

If you're uninsured, we offer a 40 percent discount on your hospital bill.  Your account balance is due within 30 days of the date you received hospital services. If you're unable to pay your bill, please contact us to make payment arrangements.

To view the Benefis Health System Billing and Collection Policy, please click here.

Yet, despite refusing to charge Plaintiffs and Class Members their contracted rate for services – whether under health insurance, Medicaid, or Medicare – Defendants refuse to even provide the blanket 40% discount given to uninsured patients.

52.     Under the Lien Act, Defendants routinely violate the notice requirements of Mont. Code Ann. § 71-3-115, by failing to serve notice upon the person against whom liability is asserted, thus invalidating the liens.

53.     Defendants intentionally pursue this conduct despite the contractual and regulatory requirements and patient expectation that charges will be submitted to the health insurer, Medicaid, or Medicare.

54.     Defendants have engaged in a pattern and practice of filing and collecting, or attempting to collect on, liens for the full, non-discounted rate for medical services rendered to an insured patient where a third party might be liable, despite being informed that the patient has valid health insurance, Medicaid, and Medicare knowing that amounts sought in the liens are unlawful.

55.     Defendants engaged in this pattern and practice of unlawful conduct knowing that similar conduct by other healthcare providers resulted in substantial liability. *See, e.g., Morgan v. St. Luke's Hosp. of Kan. City,* 403 S.W. 3d 115 (Mo. Ct. App. 2013) (holding a hospital could not file liens on patient claims against third-party tortfeasors and resulting in a nearly $4 million judgment and injunction).

56.     The following is an illustration of how the lien scheme works in one case.   Plaintiff Terri Searsdodd is insured through Blue Cross Blue Shield. Searsdodd was treated by one or more Defendants after a car accident.   Without serving Searsdodd with any liens, Defendants sent a fax to Progressive Insurance on May 30, 2021, claiming $3,829 in medical liens.

5/30/2021 09:11:28 PDT    To: 18772137258    Page: 01/61    From: Benefis Health System MVA/GL FTPL Processing    Fax: 8888772981



|  | Benefis Health System |  |
|---|---|---|
| HEALTH SYSTEM | Motor Vehicle Accidents (MVA) & General Liability (GL) FTPL | **Fax** |
| MEDEQUITY CORPORATION | Claims Processing | |
| FTPL Claims Authorized Agent | Tel: (855) 256-5889 | |
| for Benefis Health System | Fax: (888) 877-2981 | |



| **To:** | Louisa Bustamante | **From:** | Benefis MVA/GL FTPL Processing GNR |
|---|---|---|---|
| **Fax:** | 1-877-213-7258 | **Date:** | May 30, 2021 09:09 AM |
| **Organization:** | Progressive Insurance First Party Claims | | |
| **Subject:** | Claim #214158023 | | |

RE:    Progressive Insurance

Claim #214158023

ATTN:    Louisa Bustamante

Via Fax:    877-213-7258

Dear Louisa Bustamante,

Our hospital provided MVA related services for this patient; please see attached liens for payment. Please let us know of any questions or discrepancies so that we may assist you as soon as possible.

As you know, Montana statutes require speedy payment to providers. Benefis Health respectfully requests immediate payment. We also request that whenever possible the payment is sent directly to Benefis Health. Can you please confirm that this would be possible?

We urgently request advisement of whether our bills will exhaust all benefits. Please advise via the email address below, not via regular mail as we will not receive those documents for several weeks.

Please advise if you are aware of other policies or benefits that may apply to these bills, if you are unable to make full payment.

|  | Account | DOS | Lien Amount |
|---|---|---|---|
| 1 | D58414418 | 4/30/2021 | $375.00 |
| 2 | D58461410 | 5/21/2021 | $1,738.00 |
| 3 | D58301632 | 04/01/2021-04/30/2021 | $636.00 |
| 4 | 5327218 | 4/15/2021 | $566.00 |
| 5 | 5340969 | 4/22/2021 | $257.00 |
| 6 | 5368124 | 5/3/2021 | $257.00 |

| Total this fax: | $3,829.00 |
|---|---|

When making payments, please ensure that any checks clearly indicate the account numbers you
Received Date: 05/30/2021

In this instance, although Defendants never served Searsdodd or her attorneys with any medical liens, she received bills. Searsdodd received this billing statement on August 5, 2021:

25

Make Checks Payable To:

Benefis Hospital Physician Services
In care of Wells Fargo Bank
PO Box 912613
Denver, CO 80291-2613
USA
ENCOUNTER INVOICE 5327218

| | IF PAYING BY CREDIT CARD, FILL OUT BELOW |
|---|---|
| | Check Card Using For Payment |
| | ☐ Discover   ☐ Mastercard   ☐ Visa |
| | Card Number                    CVV      Amount |
| | Signature                               Exp. Date |

| STATEMENT DATE | PAY THIS AMOUNT | ACCOUNT NBR |
|---|---|---|
| 08/05/2021 | $0.00 | 31863 |
| Tax id: 810232122 | SHOW AMOUNT PAID HERE $ | |

ADDRESSEE:
Terri H Searsdodd
3725 6th Ave N
Great Falls, MT 59401
USA

☐ Please check box if above address is incorrect or insurance information has changed and indicate change(s) on reverse side.

REMIT TO:
Benefis Hospital Physician Services
In care of Wells Fargo Bank
PO Box 912613
Denver, CO 80291-2613
USA
(406) 455-3535

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT
For Questions Call 1-406-455-3555

| DATE | PATIENT NAME | PROVIDER | CPT4 | DIAG | DESCRIPTION OF SERVICE | AMOUNT |
|---|---|---|---|---|---|---|
| 04/19/21 | Terri Searsdodd | Cameron, Todd | 99203-25 | S63.682A | Ofc/Outpt Visit, New, Level 3 | $309.00 |
| 04/19/21 | Terri Searsdodd | Cameron, Todd | 29075-FA | S63.682A | Application, Cast; Elbow To Finger (Short | $257.00 |
| 05/06/21 | | | | | PAY - BCBS | $0.00 |
| 05/06/21 | | | | | PAY - BCBS | -$176.71 |
| 06/11/21 | | | | | PAY - Lien | $0.00 |
| 06/11/21 | | | | | PAY - Lien | $0.00 |
| 05/06/21 | | | | | ADJ - BCBS | $0.00 |
| 05/06/21 | | | | | ADJ - BCBS | -$132.29 |
| 07/01/21 | | | | | ADJ - BCBS | $0.00 |
| 07/01/21 | | | | | ADJ - BCBS | $132.29 |
| 07/08/21 | | | | | REF - Refund Insurance | $176.71 |

| Account Number | Charges | Payments | Refunds Adjustments | Estimated Balance Due From Insurance | Balance Due From Patient |
|---|---|---|---|---|---|
| 31863 | $566.00 | -$176.71 | $176.71 | $566.00 | $0.00 |

MESSAGE:

Please Pay This
AMOUNT >>>> $0.00

** PAYMENT DUE UPON RECEIPT *THANK YOU **
ENCOUNTER INVOICE
Printed by mohndenl ( 3173 ) on 8/5/2021 3:41:00 PM

Page: 1 of 1

On April 19, 2021, BHS, BH, and/or BMG charged Searsdodd $309 for an office visit and $257 for an arm cast.  These are the chargemaster rates.  On May 6, 2021, Blue Cross Blue Shield, Searsdodd's health insurer, paid its contract rate of $176.71.  As reflected above, as of May 6, 2021, Defendants BH, BMG, and/or BHS were

*paid in full*.  Searsdodd owed no debt for these services.  Nevertheless, having been *paid in full* and despite Searsdodd owing no debt, Defendants claimed a medical lien on May 30, 2021, for the full value of $566, as shown on the fax communication to Progressive.  The "Balance Due From Patient" states $0.00.

After *being paid* in full from Searsdodd's health insurer on May 6, 2021, Defendants notified Progressive Insurance on May 30, 2021, that a purported lien is claimed on $566, which Searsdodd does not owe.  Apparently honoring Defendants' lien, which was never served on Searsdodd and fails to comply with Montana law, Progressive tendered payment to Defendants on June 11, 2021. For unknown reasons the payment for the lien is listed as $0.00.  Having already received payment in full for its contracted rate for services that Searsdodd is entitled to receive under her health insurance policy, Defendants were paid again – this time for the full, undiscounted rate that it is otherwise unable to receive.  Nearly a month later, Defendants refunded $176.71 not to Searsdodd, who they double-billed, but to Blue Cross Blue Shield.

Despite being *paid in full* on May 6, 2021, in their May 30, 2021, communications to Progressive, Defendants made numerous misrepresentations in asserting its lien on a non-existent debt:  "As you know Montana statutes require speedy payment to providers.  Benefis Health respectfully requests immediate payment.  We also request that whenever possible the payment is sent directly to

Benefis Health." Demanding immediate double payment of a non-existent debt is improper and unlawful. Further demanding single-party payment over the priority lien of Searsdodd's attorneys contravenes the plain language of the Lien Act. This is an exemplar illustration of Defendants' practices, policies, and procedures, which impacted Plaintiffs and Class Members.

## CLASS ALLEGATIONS

57. Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs are members of the subclasses classes they seek to represent and bring this action individually and on behalf of all similarly situated persons defined as follows:

### Health Insurance Subclass

All individuals who (i) received healthcare treatment from Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., or Kalispell Regional Medical Center, Inc. for injuries sustained through the fault or neglect of another; (ii) were covered by private health insurance when they received healthcare treatment; and (iii) against whom Defendants asserted a lien under Mont. Code Ann. § 71-3-1114.

Excluded from the Putative Class are: (i) any defendant or any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any of defendants' legal representatives, predecessors, successors, and assigns; (ii) judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

### Medicaid Subclass

All individuals who (i) received healthcare treatment from Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., or Kalispell Regional Medical Center, Inc. for injuries sustained through the

fault or neglect of another; (ii) were covered by Medicaid when they received healthcare treatment; and (iii) against whom Defendants asserted a lien under Mont. Code Ann. § 71-3-1114.

Excluded from the Putative Class are: (i) any defendant or any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any of defendants' legal representatives, predecessors, successors, and assigns; (ii) judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

**Medicare Subclass**

All individuals who (i) received healthcare treatment from Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., or Kalispell Regional Medical Center, Inc. for injuries sustained through the fault or neglect of another; (ii) were covered by Medicare when they received healthcare treatment; and (iii) against whom Defendants asserted a lien under Mont. Code Ann. § 71-3-1114.

Excluded from the Putative Class are: (i) any defendant or any entity in which any defendant has a controlling interest or which has a controlling interest in any defendant, and any of defendants' legal representatives, predecessors, successors, and assigns; (ii) judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

58.    Upon information and belief, under Rule 23(a)(1), the class is so numerous that joinder of all members is impracticable.

59.    Upon information and belief, under Rule 23(a)(2), Defendants engaged in a standard, uniform course of conduct that affects all class members in a common manner, including:

      a.  Whether Defendants' practice of filing liens against insured patients at rates over the contractual or regulatory rates and then collecting or attempting to collect the same is unlawful;

b. Whether Defendants engaged in a pattern of racketeering activities as alleged herein;

c. Whether Defendants employ a policy and business model of refusing to submit otherwise valid health insurance, Medicare, or Medicaid claims for insured patients injured by a third-party to increase their profits or financial gain;

d. Whether Defendants employ a policy and business model of circumventing contractual and regulatory prohibitions against "balance billing" by filing improper and inflated liens to increase their profits or financial gain;

e. Whether Defendants, acting in concert through the sometimes fictional and legally non-existent "MedEquity" entities used false, deceptive, and misleading representations and means with the collection of a debt;

f. Whether Defendants, acting in concert through the sometimes fictional and legally non-existent "MedEquity" entities used unfair means to collect or attempt to collect a debt;

g. Whether Defendants BHS, BH, BMG and KRMC entered into express or implied agreements with various health insurers,

Medicaid, and Medicare requiring, *inter alia,* that health insurance claims should be promptly submitted to the insurers for payment;

h. Whether Plaintiffs and the Class Members are third-party beneficiaries to such agreements;

i. Whether Defendants should be enjoined from continuing the unlawful, unfair, and predatory lien and debt collection practices alleged herein;

j. Whether Defendants violated the notice requirements of Mont. Code Ann. § 71-3-115, thus invalidating the liens.

60.    Upon information and belief, under Rule 23(a)(3), Plaintiffs' claims are typical of other class members, their claims arise from the same practice or course of conduct that gives rise to the claims of other class members, and the claims are based upon the same legal theories.

61.    Upon information and belief, under Rule 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the class, they have no interest antagonistic to those of the rest of the class, and they retained counsel that is qualified, experienced and competent to conduct the litigation.

62.    Plaintiffs seek class certification under each independent subpart of Rule 23(b).   Prosecuting separate actions would both create a risk of varying adjudications and such adjudications with respect to individual class members would

31

be dispositive of the interests of the other members not parties to the individual adjudications.

Further, Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class.

Finally, there are common questions of law and fact among all members, which predominate over any individual question; this action is superior to any other form of action; that the interest of individuals are best served by a class action; that it is desirable to concentrate the litigation in this forum which will avoid inconsistent results and duplicative costs; and there is no difficulty in the maintenance of the case as a class action in that the identities of class members and the amount of the alleged damages are easily determined and calculated by using the business records of Defendants.

## COUNT I
### Racketeer Influenced and Corrupt Organizations Act ("RICO")
### 18 U.S.C. § 1964

63.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

64.     RICO provides a civil cause of action against an enterprise engaging in conduct through a pattern of racketeering activity (or predicate acts) injuring

Plaintiffs' and Class Members' business or property by the conduct constituting the violation.

### Enterprise

65.    Defendants BHS, BH, BMG, KRMC, MedEquity Corporation, and Magellan are all persons within the meaning of 18 U.S.C. § 1961(3).

66.    At all relevant times, in violation of 18 U.S.C. § 1962©, BHS, BH, BMG, KRMC, MedEquity Corporation, and Magellan (a/k/a MedEquity) conducted the affairs of an association-in-fact enterprise, as that term is defined in 18 U.S.C. § 1961(4) (the "MedEquity Unlawful Lien Enterprise"). The affairs of the MedEquity Unlawful Lien Enterprise effect interstate commerce through using the mail and wires to engage in a pattern of racketeering activity.

### Conduct

67.    The MedEquity Unlawful Lien Enterprise is an ongoing, continuing group or unit of persons or entities associated together for the common purpose of regularly asserting and collecting unlawful payment of medical liens reflecting amounts exceeding the contractual and regulatory amounts Plaintiffs and Class Members may pay and Defendants are legally obligated to accept.

68.    While the members of the MedEquity Unlawful Lien Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The MedEquity Unlawful Lien Enterprise has a

systematic linkage because upon information and belief, there are contractual relationships, agreements, financial ties, and coordination of activities between and among Defendants.

69.    Defendants BHS, BH, BMG, and KRMC control and direct the affairs of the MedEquity Unlawful Lien Enterprise and use other members of the enterprise, including but not limited to Defendants Magellan and MedEquity Corporation and its various agents or employees, including without limitation, John Anderson, James Gonzalez, Cynthia Gonzalez, Ulises Gonzalez, and Debra Somerville, to carry out the scheme of collecting payment of unlawful medical liens.

70.    By filing and collecting payment of medical liens reflecting the rates exceeding contractual and regulatory rates to which Plaintiffs and Class Members are entitled is a violation of law, Defendants engaged in the MedEquity Unlawful Lien Enterprise distinct from their own affairs.

### *Pattern and Predicate Acts*

71.    Defendants' scheme to collect unlawful medical liens was facilitated by the United States mail and wire.  The scheme constitutes racketeering activity within the meaning of 18 U.S.C. § 1961(1), as acts of mail and wire fraud, under 18 U.S.C. §§ 1341 and 1343.

72.    Acting at the direction and on behalf of Defendants BHS, BH, BMG, and/or KRMC, Defendants MedEquity Corporation and Magellan and its agents or

employees used the mail and wire to falsely represent to Plaintiffs, Class Members, and third parties that the medical liens constitute valid, lawfully owed debts and make false representations to coerce payments from Plaintiffs and Class Members. In reality, as Defendants knew levying medical liens against Plaintiffs and Class Members (all of whom had health insurance, Medicaid or Medicare) at the full, non-discounted rate for healthcare services received from Defendants BHS, BH, BMG, and/or KRMC violates contractual and regulatory restrictions described herein.

73.   Defendants engaged in a scheme to defraud Plaintiffs and Class Members by utilizing a plan or course of action to deprive Plaintiffs and Class Members of money or property with false or fraudulent pretenses, misrepresentations or promises.

74.   The MedEquity Unlawful Lien Enterprise is an intentional act, intended to induce Plaintiffs, Class Members and third parties to interfere with or surrender their legal rights. The MedEquity Unlawful Lien Enterprise deprives Plaintiffs and Class Members of their contractual and regulatory rights under health insurance policies, Medicaid, and Medicare; the right to dispute the debt associated with the unlawful lien; and interferes with other, priority liens under § 71-3-1114(3), MCA, by demanding a "single-party check" that fails to account for those other, priority liens. The MedEquity Unlawful Lien Enterprise accomplishes the end it designed by threatening legal action if the unlawful lien is not satisfied by Plaintiffs, Class

Members, and/or third parties.  In one instance, Defendants MedEquity Corporation and/or Magellan, acting at the direction of Defendants BHS, BH, BMG, and/or KRMC and to further the MedEquity Unlawful Lien Enterprise, threatened to improperly levy its lien on an attorney's trust account by threatening, "You are reminded that no monies intended for Benefis Health can be released from trust funds until payment is made in full for related liens, and we are prepared to seek legal enforcement of the liens and trust funds disbursement records.  This account is overdue and payment is requested immediately."  Defendants made such threats knowing liens are not self-executing.  In another instance, Defendants MedEquity Corporation and/or Magellan, acting at the direction of Defendants BHS, BH, BMG, and/or KRMC and to further the MedEquity Unlawful Lien Enterprise, threatened to sue a third party insurance company, "… so I would appreciate it if you can let him know that if payment is not received in the next few days we would pursue legal action against Progressive, since that is our only path. … Sorry you are caught up on this, providers are often at the mercy of attorneys."  In other instances, Defendants MedEquity Corporation and/or Magellan, acting at the direction of Defendants BHS, BH, BMG, and/or KRMC and to further the MedEquity Unlawful Lien Enterprise, further threatened third party insurers with lawsuits if the insurer issued payment to an attorney (despite an attorney having a priority lien under §71-3-1114(3), MCA). In other instances, Defendants threatened third-party insurers with lawsuits seeking

"all costs of lien enforcement," when such relief is not statutorily permissible in Montana.  In a particularly egregious example, Defendants' improper and unlawful threats of legal action to enforce their invalid lien against a third-party insurer caused the insurer to withhold and retain $58,156.00 owed to an injured party.

75.     Through the MedEquity Unlawful Lien Enterprise, Defendants engaged in material misrepresentations, specifically stating an amount is owed by Plaintiffs and Class Members that is not actually owed under their health insurance contracts or government healthcare program.  The lien amount communicated by Defendants to Plaintiffs, Class Members and third parties falsely represents the amount actually owed.  This is precisely what Defendants intended, *to wit*, collecting more than they legally may collect under the respective health insurance contracts or government healthcare programs.  When Defendants asserted their unlawful liens, they knew these representations were untrue because their own financial records were used to assert the invalid liens.  Defendants knew their contracts with health insurers and Medicaid and Medicare laws and regulations prohibit their unlawful conduct, *to wit*, billing more than the contracted or regulatory amount, "balance billing," and/or refusing to submit claims to health insurers, Medicaid, or Medicare, all without Plaintiffs' and Class Members' knowledge.  These legal and contractual obligations were concealed from Plaintiffs and Class Members.  These material misrepresentations are facilitated through Defendants' use of the mails and wires.

76.    The MedEquity Unlawful Lien Enterprise is deceptive because Plaintiffs and Class Members were not informed that by seeking medical care at BHS, BH, BMG, and/or KRMC, they would not receive legally-entitled benefits under their health insurance, Medicare, or Medicaid; Defendants falsely communicate that "MedEquity" is a "payer," when it is no such thing; engaging in unlawful "balance billing"; using Defendant Magellan to assert medical liens without statutory authorization; and using Defendant Magellan to assert liens with one or more fictional, non-existent legal entities that have no standing to assert such liens.

77.    Defendants accepted payments and engaged in other correspondence with Plaintiffs, Class Members, and third parties to further their scheme through the mail and wire.

78.    The predicate acts described constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) in which Defendants engaged under 18 U.S.C. § 1962©.

79.    The predicate acts of "racketeering activity" described herein are part of the nexus of affairs of the MedEquity Lien Enterprise.  The racketeering acts committed by the MedEquity Lien Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on Plaintiffs and Class Members.  Because this case was brought on behalf

38

of a class of similarly situated patients who received healthcare services from BHS, BH, BMG, and/or KRMC and there was numerous acts of mail and wire fraud used to carry out the scheme to collect unlawful medical liens filed against patients with health insurance or government assistance, it would be impracticable for Plaintiffs to plead the details of the scheme with particularity. Plaintiffs cannot plead the precise dates of Defendants' uses of the mail and wire because this information cannot be alleged without access to their records, but based on the number of Plaintiffs, there are over two acts of racketeering activity within the last ten years.

80.    The pattern of racketeering activity is ongoing, open-ended, and threatens to continue indefinitely unless the Court enjoins the racketeering activity.

### *Injuries to Plaintiffs and Class Members*

81.    As a direct and proximate result of these violations of 18 U.S.C. § 1962(c), (d), Plaintiffs and Class Members have suffered substantial damages. Defendants are jointly and severally liable to Plaintiffs and Class Members for treble damages, with all costs, plus reasonable attorney's fees, as provided under 18 U.S.C. § 1964(c).

<u>**COUNT II**</u>
**Fair Debt Collection Practices Act ("FDCPA")**
**15 U.S.C. § 1692**

82.    Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

83.     Plaintiffs and Class Members are a "consumer" as defined in 15 U.S.C. § 1692a(3).

84.     Defendants Magellan (a/k/a "MedEquity," "MedEquity, Inc., and "MedEquity Corporation") and MedEquity Corporation are a "debt collector" as defined in 15 U.S.C. § 1692a(6), because they (1) uses instrumentalities of interstate commerce or the mails in its business, the principal purpose of which is the collection of debts; and (2) regularly collects or attempts to collect, directly or indirectly, debts owed or sue or asserted to be due.

85.     While ordinarily exempt from the FDCPA as creditors, Defendants BHS, BH, BMG, and KRMC are subject to the FDCPA under 15 U.S.C. § 1692a(6), known as the "false name exception."   Defendants systematically engaged in communications with Plaintiffs and Class Members that would confuse the least sophisticated consumer on whether the communications came from the creditors, Defendants BHS, BH, BMG, and KRMC, or Defendants MedEquity Corporation or Magellan (a/k/a "MedEquity," "MedEquity, Inc., and "MedEquity Corporation"), as a third-party debt collector.  For example, in multiple instances, lien communications bear references to all Defendants, interchangeably using each other's logo, corporate names, integrated email addresses (e.g. krhpayer@medequityinc.com and bhspayer@medequityinc.com) and phone numbers:









In at least one instance, a BHS management employee referred to "Medequity" as one of its "collection agencies." Because of these deceptive and confusing tactics,

all Defendants are jointly and severally liable under the FDCPA.  At various times, MedEquity Corporation was not a valid legal entity allowed to collect debts.

86.     Plaintiffs and Class Members dispute the medical liens are valid debts, but for purposes of 15 U.S.C. § 1692a(5), the term "debt" includes an "**alleged** obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." (emphasis added).  Defendants expressly and impliedly treat the liens as debts in collecting the same.  For example, in one instance, Defendant Magellan, referring to a lien, stated, "This account is overdue and payment is requested immediately."  By treating a lien as an alleged debt, Defendants' concerted conduct implicates the FDCPA.

87.     Defendants have used, and continue to use false, deceptive, and misleading representations and means with the collection of medical liens in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).  Defendants falsely represented to Plaintiffs, Class Members and third parties that the medical liens constitute valid, lawfully owed debts.  In reality, Defendants knew or should have known, levying medical liens against Plaintiffs and Class Members (all of whom had valid health insurance, Medicare, or Medicaid) at rates over the

discounted rates to which Plaintiffs and Class Members are legally entitled violates the law.

88.     Defendants knew or should have known that the liens are not debts at all and it is improper to treat them as such.  It is axiomatic that a lien is not a debt nor does a lien create a debt.  "A 'lien' is a charge imposed in some mode other than by transfer in trust upon specific property by which it is made security for the performance of an act."  Mont. Code Ann. § 71-3-101(2) (2019).  More specifically, a lien is an encumbrance on property as security for the payment of a debt.  A lien is inherently distinct from the obligation it secures.  When a health insurer, Medicaid, or Medicare pays Defendants what is due under the insurance contract or regulations, there is no underlying debt for the lien to secure.   By their health insurance, Medicaid, or Medicare, Plaintiffs and Class Members owed no debt because their charges were covered by those insurance contracts and regulations.  Defendants engaged in deception by leading Plaintiffs and Class Members to believe they allegedly owed a "debt" when that was not the case.

89.     Defendants have used, and continue to use, unfair means to collect or attempt to collect medical liens in violation of 15 U.S.C. §§ 1692f and 1692f(1).  The FDCPA expressly prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  Here, there is no express authorization to levy medical

liens against Plaintiffs and Class Members (all of whom had valid health insurance, Medicaid, or Medicare) at rates for healthcare services over the contractual or regulatory rates to which Plaintiffs and Class Members are entitled, nor is such conduct "permitted by law."

90.     In their communications, Defendants further deceived Plaintiffs and Class Members by stating they must dispute matters related to liens "WITHIN 24 HOURS OF DISCOVERY OF THE ISSUE."   This is false.   In other lien communications, Defendants deceived Plaintiffs and Class Members by asserting, "Your settlement is the primary payer for this lien," despite knowing that a health insurer, Medicaid, or Medicare provider paid or should have paid the claimed charges and that the claimed charges exceed the legal and regulatory rates for such services.

91.     Throughout the pendency of the foregoing collection attempts, and in direct violation of the FDCPA, none of the liens or lien correspondence from Defendants contained the statutorily required disclosures expressly required of a debt collector under 15 U.S.C. § 1692g.

92.     Throughout the pendency of the foregoing collection attempts, Defendants deceived Plaintiffs and Class Members that "MedEquity," "MedEquity Corporation," and "MedEquity, Inc." are legally recognized entities capable of taking legal action against Plaintiffs and Class Members when that assertion is false

and deceptive, because these entities are fictional with no legal standing or not licensed to transact business in Montana and legally prohibited from prosecuting liens or claims in Montana courts under § 35-11-1502(a), MCA.

93.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members are entitled to actual damages, statutory damages, and an aware of reasonable attorney's fees and costs under 15 U.S.C. § 1692k.

**COUNT III**
**Montana Consumer Protection Act ("MCPA")**
**Mont. Code Ann. § 30-14-101**

94.     Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

95.     Plaintiffs and Class Members are a "consumer" as defined in Mont. Code Ann. § 30-14-102(1) (2019).

96.     Defendants are a "person" as defined in Mont. Code Ann. § 30-14-102(6) (2019).

97.     Defendants are engaged in "trade" and "commerce" as defined in Mont. Code Ann. § 30-14-102(8) (2019).

98.     Under Mont. Code Ann. § 30-14-103 (2019), it is unlawful for Defendants to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

99.    Defendants engaged in deceptive or unfair acts and practices which offend established public policies and which are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

100.    The public policy embodied in the Lien Act is clear.  In the case of nonpayment, medical providers may need the right to assert a lien against tort recoveries to cover their costs.  This case is not about nonpayment.  Here, Defendants are using the Lien Act to recover more than they legally may recover for services.

Absent a third-party tortfeasor, Defendants would have no claim to come against Plaintiffs and Class Members, but what Defendants want – granting them the right to assert additional liens above the debt – violates Montana public policy prohibiting assignment of personal injury tort claims.  *See Northland Casualty Co. v. Mulroy,* No. CV-13-232-M-DLC, 2016 WL 1322428, at *2 (D. Mont. Mar. 31, 2016) (quoting *Youngblood v. Am. States Ins. Co.,* 866 P.2d 203, 206 (Mont. 1993) ("Montana law has long held that a property damage claim is assignable, while a cause of action growing out a personal right, such as a tort, is not assignable."). Other courts recognize that excessive hospital liens are void because they are tantamount to an assignment of the interest of the injured party.  *See, e.g., West Neb. Gen. Hosp. v. Farmers Ins. Exch.,* 475 N.W.2d 901, 906 (Neb. 1991).

101.    Defendants' practice of filing medical liens over, or in lieu of, contractual rates bargained for or mandated by government agencies for Plaintiffs'

and Class Members' healthcare constitutes an unfair or deceptive practice in violation of the statute and such conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.  Defendants' conduct also violates the MCPA because it violates contractual and regulatory billing requirements and allows Defendants to reap a windfall, even sometimes to receive double payment for the same services.

102.   In their lien communications, Defendants further deceived Plaintiffs and Class Members by stating they must dispute matters related to liens "WITHIN 24 HOURS OF DISCOVERY OF THE ISSUE."  This is false.  In other lien communications, Defendants deceived Plaintiffs and Class Members by asserting, "Your settlement is the primary payer for this lien," despite knowing that a health insurer or government healthcare benefits provider paid or should pay the charges at a lesser amount.

103.   Although Mont. Code Ann. § 30-14-133 (2019) provides for individual but not class actions under the MCPA, Montana federal courts, following precedent in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 550 U.S. 393 (2010), have held Fed. R. Civ. P. 23 preempts state statutes (including the MCPA) prohibiting class action suits.

104.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members may have actual damages, statutory damages, treble

damages, and an award of reasonable attorney's fees and costs under Mont. Code Ann. § 30-14-133 (2019).

**COUNT IV**
**Tortious Interference with Business Relations**

105.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

106.   Plaintiffs and Class Members enjoyed a valid business relationship with their own health insurers and government healthcare services by an express or implied contract or regulatory framework.

107.   Defendants were informed and actually knew of the above-described business relationships.

108.   Defendants intentionally interfered and prevented Plaintiffs and Class Members from receiving the benefit of their business relationship.  Defendants acted without right or justifiable cause to procure additional monies they were not entitled to in disregard for the contractual and regulatory rights of Plaintiffs and Class Members.

109.   Instead of, or in additional to, submitting Plaintiffs' and Class Members' health insurance providers or government healthcare, Defendants filed one or more medical liens, which seek to collect rates over the contractual or regulatory rates which Plaintiffs and Class Members are entitled.  The rates reflected in Defendants' liens far exceed the discounted rates they would receive if Plaintiffs

and Class Members' medical bills were properly submitted to their health insurers or government healthcare services.

110.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and Class Members suffered general and special damages in an amount to be determined at trial.  Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221.

**COUNT V**
**Unjust Enrichment**

111.    Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

112.    Defendants were unjustly enriched through the collection of rates for healthcare services that exceed the discounted rates Plaintiffs and Class Members are entitled to receive.

113.    Defendants engaged in a pattern and practice of collecting rates exceeding the contractual or regulatory rates for medical services rendered to an insured patient where a third party could potentially be liable, despite being informed that the patient has valid health insurance or government healthcare and knowing that the amounts claimed in medical liens exceed those allowed charges.

114.    Plaintiffs and Class Members were damaged by Defendants' conduct. It is inequitable for Defendants to retain payment of the medical liens, because any

such payments were received with complete disregard (or in addition to) insurance coverage and contrary to the contracted or regulatory rate for the services.

115.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered general and special damages.   Plaintiffs and Class Members also seek equitable disgorgement of all monies Defendants improperly collected.   Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221 (2019).

## COUNT VI
### Fraud

116.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

117.   Defendants filed medical liens against Plaintiffs and Class Members (all of whom had valid health insurance or government healthcare) at the full, non-negotiated rate for healthcare services.

118.   Defendants materially represented to Plaintiffs, Class Members, and third parties that the medical liens constitute valid, lawfully owed debts.

119.   Defendants knew the medical liens representing the full, non-negotiated rate for healthcare services were false because Defendants knew Plaintiffs and Class Members had valid health insurance, Medicaid, or Medicare, requiring Defendants to accept the contract or regulatory rates.

120.   Defendants intended Plaintiffs and Class Members would rely on the liens by threatening legal action if the unlawful liens were not satisfied.

121.   In their lien communications, Defendants further deceived Plaintiffs and Class Members by stating they must dispute matters related to liens "WITHIN 24 HOURS OF DISCOVERY OF THE ISSUE." This is false.

122.   Plaintiffs and Class Members reasonably expected Defendants to comply with the law and therefore believed the amounts reflected in the medical liens to be valid, lawfully owed debts. Had the true nature of the unlawful medical liens been disclosed to Plaintiffs and Class Members, they would have disputed the liens and not paid them.

123.   Plaintiffs and Class Members justifiably relied on Defendants' knowing, affirmative misrepresentations and/or active concealment. By misrepresenting and/or concealing material information about the medical liens, Defendants intended to induce Plaintiffs and Class Members into believing they owed the amounts reflected in the liens.

124.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered general and special damages in an amount to be determined at trial. Plaintiffs and Class Members also seek equitable disgorgement of all monies Defendants improperly collected. Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221, MCA.

## COUNT VII
### Constructive Fraud

125.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

126.   Defendants owed a general duty of care to Plaintiffs and Class Members to comply with the law and honor Plaintiffs and Class Members' contractual and statutory rights for healthcare charges.

127.   By filing medical liens exceeding the allowed contractual or regulatory rates, Defendants breached their duties to Plaintiffs and Class Members through their unlawful conduct alleged herein.

128.   The unlawful medical liens misled Plaintiffs and Class Members into believing they owed more than is required by their health insurance contracts or government healthcare benefits.  Defendants concealed from Plaintiffs and Class Members their "balance billing" of amounts exceeding the health insurance contracts or government healthcare benefits.  With Medicaid, for instance, Defendants are prohibited by law from engaging in such conduct: "Providers are required to accept, as payment in full, the amount paid by the Montana Medicaid program for a service or item provided to an eligible Medicaid member in accordance with the rules of the department. Providers must not seek any payment in addition to or in lieu of the amount paid by the Montana Medicaid program from a member or his representative, except as provided in these rules. . . . A provider may not bill a

member for services as a private pay patient, if, prior to provision of services, the member informed the provider of Medicaid eligibility."  A.R.M. 37.85.406(11).

129.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members were damaged, resulting in an advantage to Defendants.  Plaintiffs and Class Members have suffered general and special damages in an amount to be determined at trial.  Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221, MCA.

## COUNT VIII
### Breach of Contract and Implied Covenant of Good Faith and Fair Dealing
### (Mont. Code. Ann. § 28-1-211).

130.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

131.   Plaintiffs and Class Members contracted with their health insurance carriers or government healthcare benefits, whereby Plaintiffs and Class Members agreed to pay monthly premiums or other compensation for healthcare benefits.

132.   Defendants BHS, BH, BMG, and KRMC entered into express or implied agreements with various health insurance carries and government healthcare providers that Defendants BHS, BH, BMG, and KRMC would provide care and treatment to these patients in exchange for a negotiated fee for service paid by the insurance carrier, Medicaid, or Medicare.

133. Plaintiffs and Class Members are the express or implied third party beneficiaries of these agreements with the health insurance carriers, Medicaid, and Medicare.

134. As third party beneficiaries, Plaintiffs and Class Members are protected by the implied covenant of good faith and fair dealing under Mont. Code Ann. § 28-1-211, which requires honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

135. Defendants BHS, BH, BMG, and KRMC, by and through Defendants Magellan and/or MedEquity Corporation, breached the agreements with the health insurance carriers, Medicaid, and Medicare and the implied covenant of good faith and fair dealing, by intentionally refusing to submit medical bills for Plaintiffs and Class Members, "balance billing" for amounts exceeding the contract or regulatory rates, and/or collecting amounts from both Plaintiffs and Class Members and their respective insurers, Medicaid, or Medicare.

136. The breaches described herein resulted in a windfall to Defendants BHS, BH, BMG, and KRMC, whose medical liens far exceed the discounted reimbursement rates they would receive if Plaintiffs and Class Members' medical bills were submitted to their health insurance carrier, Medicaid, or Medicare.

137.   As a direct and proximate result of the breaches described herein, Plaintiffs and Class Members suffered actual and special damages in an amount to be determined at trial.

**COUNT IX**
**Deceit**
**Mont. Code Ann. § 27-1-712, *et seq.***

138.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

139.   Defendants deceived Plaintiffs and Class Members through its intentional conduct described herein, including without limitation, concealing the "MedEquity" billing scheme; disguising "MedEquity" as a payer; concealing their practice of not billing health insurers or government insurers as reasonably expected; using fictional entities to assert liens; misrepresenting the status of liens and amounts due; making improper legal threats; disguising the identity of the entities involved in the billing scheme; failing to provide proper notice of the claimed liens; claiming amounts owed that exceed the amounts due under health insurance contracts and government regulations; and other deceptive acts. These intentional acts and others alleged herein constitute deceit within the meaning of Mont. Code Ann. § 27-1-712(2).

140.   Defendants engaged in these intentional acts with the intent to induce Plaintiffs and Class Members to act contrary to their legal rights and to defraud them of their property.

141.   Under Mont. Code Ann. § 27-1-712(3), one who practices a deceit with intent to defraud the public or a particular class of persons is considered to have intended to defraud every individual in that class who is actually misled by the deceit.

142.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members were damaged, resulting in an advantage to Defendants.  Plaintiffs and Class Members have suffered general and special damages in an amount to be determined at trial.  Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221, MCA.

## COUNT X
### Conversion and Misappropriation
### Mont. Code Ann. § 27-1-320, *et seq.*

143.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

144.   Defendants converted or misappropriated funds belonging to Plaintiffs and Class Members.

145.  Plaintiffs and Class Members have a possessory interest in the converted funds.

146.   Defendants intentionally interfered with that possession when they unlawfully asserted liens to collect against Plaintiffs' and Class Members' property, including Defendants' failure to honor higher priority liens.

147.   Defendants intentionally asserted liens against Plaintiffs' and Class Members' property knowing they are not legally obligated to pay the amount asserted in the liens.

148.   Plaintiffs and Class Members do not have to demand a return of any funds collected because the initial taking was unlawful and the conversion was an affirmative assertion of title inconsistent with Plaintiffs' and Class Members' rights.

149.   Defendants' conversion and misappropriated benefited Defendants to Plaintiffs' and Class Members' detriment.

150.   As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members were damaged, resulting in an advantage to Defendants.  Plaintiffs and Class Members have suffered general and special damages in an amount to be determined at trial.  Plaintiffs and Class Members are entitled to an award of punitive damages under Mont. Code Ann. § 27-1-221, MCA.

## COUNT XI
### Declaratory and Injunctive Relief

151.   Plaintiffs incorporate and reallege all previous paragraphs as if fully set forth herein.

152.   There exists an actual, imminent, and justiciable controversy between the parties as to whether Defendants' conduct of filing medical liens exceeding contractual or regulatory amounts violates the law.

153.   Plaintiffs and Class Members request that the Court take jurisdiction over the controversy under 28 U.S.C. § 2201, and determine and declare the rights, interests, and responsibilities of the parties as alleged herein.

154.   Plaintiffs and Class Members request the Court invalidate and extinguish the liens as, *inter alia* (1) invalidly asserted under Montana law; (2) "MedEquity," "MedEquity Corporation," and "MedEquity, Inc." are at various times fictional entities with no legal standing to assert liens and legally prohibited from enforcing liens in Montana courts under § 35-11-1502(2), MCA; (3) there is no debt owed giving rise to the liens; (4) the liens constitute an impermissible assignment of personal injury claims;   (5) 42 U.S.C. § 1396a(a)(25)(C) and 42 C.F.R. § 447.15 preempt Mont. Code Ann. § 71-3-1114, to the extent Defendants argue the state law allow them to collect amounts above the designated reimbursement amount or otherwise "balance bill" Plaintiffs and Class Members; (6) Defendants' assertion of liens exceeding the contracted or regulatory amount allowed constitutes unlawful "balance billing" in violation of Defendants' contracts with health insurers and federal and state regulations; (7) Defendants' failure to comply with the notice requirements of Mont. Code Ann. § 71-3-1115.

155.   Plaintiffs and Class Members request that the Court issue a preliminary and permanent injunction against Defendants enjoining the unlawful conduct described herein.

156.   Plaintiffs and Class Members request an award of reasonable attorney's fees and costs as allowed by law.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, individually and on behalf of all similarly situated persons, demand declaratory and injunctive relief, monetary damages, punitive damages under Mont. Code Ann. § 27-1-221, interest, attorney's fees and costs, and such further, other or additional relief as may be just and proper.  In aggregate, Plaintiffs and Class Members claimed monetary relief exceeds $5,000,000, as required by 28 U.S.C. 1332(d)(2).

Dated: February 22, 2022.

CONNER, MARR & PINSKI, PLLP

/s/ Gregory G. Pinski
Gregory G. Pinski
P.O. Box 3028
520 Third Avenue North
Great Falls, MT 59403-3028
Telephone: (406) 727-3550
Facsimile: (406) 727-1640
greg@mttrials.com
ATTORNEYS FOR PLAINTIFFS

## <u>JURY DEMAND</u>

Plaintiffs demand a jury trial on all issues triable to a jury.

Dated: February 22, 2022.

CONNER, MARR & PINSKI, PLLP

/s/ Gregory G. Pinski
Gregory G. Pinski
P.O. Box 3028
520 Third Avenue North
Great Falls, MT 59403-3028
Telephone: (406) 727-3550
Facsimile: (406) 727-1640
greg@mttrials.com
ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of February, 2022, a true and correct copy of the foregoing was served upon the following counsel of record:

Dave McLean                                    [  ] U.S. Mail
MCLEAN LAW OFFICES                             [  ] Overnight delivery
3301 Great Northern Avenue, Ste. 203           [  ] Hand delivery
Missoula, MT 59808                             [  ] Fax transmittal
dave@mcleanlawmt.com                           [X] Email
*Attorneys for Benefis Defendants*

Gary Zadick                                    [  ] U.S. Mail
UGRIN, ALEXANDER, ZADICK PC                     [  ] Overnight delivery
2 Railroad Square, Suite B                      [  ] Hand delivery
Great Falls, MT 59403                           [  ] Fax transmittal
gmz@uazh.com                                    [X] Email
*Attorneys for Defendant Kalispell Regional*
*Medical Center*

Mark Rutherford Hess                           [X] U.S. Mail
718 Hermosa Street                             [  ] Overnight delivery
South Pasadena, CA 91030                       [  ] Hand delivery
*Registered Agent for Defendant Magellan*      [  ] Fax transmittal
*Resource Partners, LLC*                       [  ] Email

<u>With a Courtesy Copy to</u>:
Julie A. Shepard                               [  ] U.S. Mail
JENNER & BLOCK, LLP                             [  ] Overnight delivery
515 South Flower Street                         [  ] Hand delivery
Suite 3300                                      [  ] Fax transmittal
Los Angeles, CA 90071-2246                     [X] Email

<u>With Proof of Service filed separately for</u>:
Corporation Service Company                    [  ] U.S. Mail
251 Little Falls Drive                         [  ] Overnight delivery
Wilmington, DE 19808                           [X] Hand delivery
*Registered Agent for Defendant MedEquitry*    [  ] Fax transmittal
*Corporation*                                  [  ] Email

CONNER, MARR & PINSKI, PLLP

/s/ Gregory G. Pinski
Gregory G. Pinski
P.O. Box 3028
520 Third Avenue North
Great Falls, MT 59403-3028
Telephone: (406) 727-3550
Facsimile: (406) 727-1640
greg@mttrials.com
ATTORNEYS FOR PLAINTIFFS