# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| KODIAK BLAINE, DOUGLAS DARKO, CHRISTOPHER FLOWER, REYNOLDS HERTEL, KAREN LAPPI, APRIL POSEY, TERRI SEARSDODD, EDWARD NELSON, JON L. WILLIAMS, and EMILY HARO, individually and on behalf of all others similarly situated, | **CV-21-92-GF-BMM** |
| Plaintiffs, | **ORDER ON MOTION TO DISMISS** |
| vs. | |
| BENEFIS HEALTH SYSTEMS, INC., BENEFIS HOSPITALS. INC., BENEFIS MEDICAL GROUP, INC., KALISPELL REGIONAL MEDICAL CENTER, INC., MAGELLAN RESOURCES PARTNERS, LLC (a.k.a "MEDEQUITY," "MEDEQUITY, INC., AND "MEDEQUITY CORP.'), MEDEQUITY CORPORATION, and DOES 1-50, | |
| Defendants. | |

Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc., Kalispell Regional Medical Center, Inc., Magellan Resource Partners, LLC, Medequity Corporation, and Does 1-50 (collectively "Defendants") have

filed a Motion to Dismiss the Second Amended Complaint submitted by Plaintiffs Kodiak Blaine, Douglas Darko, Christopher Flower, Reynolds Hertel, Karen Lappi, April Posey, Terri Searsdodd, Edward Nelson, Jon. L. Williams, and Emily Haro (collectively "Plaintiffs"). (Doc. 24.) Plaintiffs allege in their Second Amended Complaint ("SAC") that Defendants have engaged in improper billing and lien practices. (Doc. 16 at 13-32.) The Court held a hearing on Defendants' motion on May 10, 2022.

## BACKGROUND

The dispute centers around billing and lien practices by Defendants. Each Plaintiff received medical treatment at Defendants' facilities after having been injured in car accidents caused by third-party tortfeasors. (Doc. 16 at ¶ 16-25.) Each Plaintiff possessed some type of health insurance, either private insurance, or public insurance through Medicare or Medicaid. *Id.* Plaintiffs allege that Defendants collectively created an entity called "MedEquity" that Defendants used to inflate Plaintiffs' medical bills. *Id.* at ¶¶ 38-42. Either private insurance, Medicare, or Medicaid paid some portion of Plaintiffs' bills with the medical providers. Instead of reducing Plaintiffs' final billing by these payments made by private insurance, Medicaid, or Medicare, Plaintiffs allege that Defendants, through MedEquity, unlawfully asserted liens against the tortfeasor's auto insurer (TPL) for the full chargemaster rates for the medical bills. *Id.*

Plaintiffs assert that Defendants' actions in filing liens to collect these "phantom" debts constitutes impermissible "balance billing" that causes harm to Plaintiffs. *Id.* at 19. "Balance billing" is the difference between the medical provider's chargemaster rates and the contractual rates with a health insurer or a regulatory price imposed by Medicaid and Medicare. *Id.* at 20. Plaintiffs' SAC alleges claims under the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1964 (Count I); Fair Debt Collection Practices Act under 15 U.S.C. § 1692 (Count II); Montana Consumer Protection Act under Mont. Code Ann. § 30-14-101 (Count III); tortious interference with business relations (Count IV); unjust enrichment (Count V); fraud (Count VI); constructive fraud (Count VII); breach of contract and implied covenant of good faith and fair dealing under Mont Code Ann. § 28-1-211 (Count VIII); deceit under Mont. Code Ann. § 27-1-712 (Count IX); conversion and misappropriation under Mont Code Ann. § 27-1-320 (Count X); and declaratory and injunctive relief (Count XI). (Doc. 16 at 38-62.)

Defendants contend that Plaintiffs lack standing as they have suffered no injury-in-fact. (Doc. 25, at 6.) With regard to Count I through Count X, Plaintiffs generally allege that they have suffered damages "[a]s a direct and proximate result" of Defendants' unlawful conduct. (Doc. 16, at 39-57.) Plaintiffs' SAC also makes much of the fact that Defendant Magellan Resources, LLC and the

MedEquity entities suffer from various legal infirmities that render them illegitimate. *Id.* at 7-13. The Court need not resolve these allegations as it determines that Plaintiffs lack standing to bring their claims.

## LEGAL STANDARD

A district court should dismiss claims under Fed. R. Civ. P. 12(b)(6) when "it appears to a certainty that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim." *Neumann v. Aid Ass'n for Lutherans*, 775 F. Supp. 1350, 1354 (D. Mont. 1991). A court may dismiss a claim under Rule 12(b)(6) "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Hubbard v. Sheffield*, 2012 WL 2969434, *1 (D. Mont. July 20, 2012) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Myers v. Howmedica Osteonics Corp.*, No. CV-14-248-M-DLC, 2015 WL 1467109, at *1 (D. Mont. Mar. 30, 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs" in assessing a motion to dismiss. *Kopeikin v. Moonlight Basin Management, LLC*, 981 F. Supp. 2d 936, 938-939 (D. Mont. 2013) (quotations omitted).

A court generally "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A court may take judicial notice of matters of public record, however, without converting a motion to dismiss into a motion for summary judgment, "as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs, Inc. v. Crest Group, Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007). A court must apply the law of the forum state on the state law claims in a diversity action. *First Inter. Bank v. Ahn*, 798 F3d 1149, 1153 (9th Cir. 2015).

Plaintiffs abandoned notice pleading in favor of a narrative format. For example, Plaintiffs' 59-page SAC discusses the concepts of chargemaster rates and balance billing, and proceedings before the 2021 Montana Legislature. (Doc. 16 at 14-22.) Plaintiffs' SAC analyzes caselaw, breaks down Defendants' billing statements, and provides an "exemplar" of one Plaintiff's alleged billing experience. *Id.* at 22-30. To the extent possible, the Court accepts as true these legal arguments, analyses, and anecdotes for purposes of analyzing this motion to dismiss. *Kopeikin*, 981 F. Supp. 2d, at 938-39.

## DISCUSSION

Plaintiffs, as the party seeking to invoke the jurisdiction of this Court, must satisfy the threshold requirement imposed by Article III of the U.S. Constitution by alleging an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95,

101 (1983). Plaintiffs must satisfy the following elements to establish standing: (1) that they have suffered an "injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury fairly may be traced to the challenged action of Defendants; and (3) that it is likely, as opposed to merely speculative, that Plaintiffs' alleged injuries would be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). An injury "must affect the plaintiff in a personal and individual way" to be considered "particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), as revised (May 24, 2016) (citation omitted). The injury "must actually exist" to be "concrete." *Id.* at 340.

### A.    Statutory Authority to File Medical Liens.

These claims require the Court to analyze Montana law. *First Inter. Bank v. Ahn*, 798 F.3d at 1153. The parties dispute the lawfulness of Defendants' actions in filing the liens. Montana law provides that insurance payments to a health care provider must be paid "in accordance with any written agreement or contract" between the health care provider and the insurer. Mont. Code Ann. § 33-1-110(2). Defendants argue that this provision entitles health care providers to "the filing of a lien at the non-discounted [chargemaster] rate." (Doc. 55, at 20.)

Plaintiffs counter that the Lien Act, codified at Mont. Code Ann. § 71-3-117, requires Defendants to file liens that "represent the reasonable value of services."

(Doc. 16 at 40.) Plaintiffs contend that the reasonable value of services comports with "whatever is negotiated to be reduced." *Id.* at 41. Plaintiffs cite to the Montana Supreme Court's decision in *Meek v. Mont. Eighth Judicial Dist. Court*, 349 P.3d 493 (Mont. 2015), to support its claim as to reasonable value of services. *Id.* at 41. *Meek* has limited applicability here.

*Meek* came to the Montana Supreme Court on a writ of supervisory control. The plaintiff challenged the district court's order that precluded admission of the plaintiff's medical bills. The district court had determined that bills from health care providers did not represent a reliable or accurate indicator of the reasonable value of the services as they routinely get inflated and "few patients ever actually pay the billed amount." *Meek*, 349 P.3d at 495. *Meek* specifically addressed whether the district court "properly limited the evidence that is admissible at trial regarding medical expenses." *Id.*

*Meek* recognized that the reasonable value of medical bills as a measure of damages presents a question for the jury. *Id.* The "medical bills received by a tort victim can be relevant evidence of issues such as the nature and severity of the injuries, and of the medical procedures or treatments that were required." *Id.* (citing *Chapman v. Mazda Motors of Am.*, 7 F.Supp.2d 1123, 1125 (D. Mont. 1998) (denying defendant's motion to exclude evidence of plaintiff's medical bills on relevancy grounds)). This Court likewise recognized that the amount of the

7

medical bills potentially proved relevant to the factfinder's determination of the nature and extent of a plaintiff's damages. *Gibson v. United States*, 2020 WL 1677585, at *10 (D. Mont. April 6, 2020).

### B.  Injuries Alleged by Plaintiffs.

"[A]t the pleading stage, the plaintiff cannot meet its burden through the assertion of bare legal conclusions, but rather 'must clearly allege facts demonstrating each element.'" *Beierle v. Taco Treat of Great Falls*, Inc., No. 19-129, 2019 WL 5213306, at *2 (D. Mont. Oct. 16, 2019) (quoting *Spokeo*, 578 U.S. at 338). Defendants contend that Plaintiffs allege injuries only from the car accidents and not from Defendants' billing practices. (Doc. 25 at 8.) Defendants contend that Plaintiffs have failed to allege that they paid, or are being asked to pay, out-of-pocket expenses for the medical care that they have received. *Id.* Plaintiffs argue that they have alleged harms aside from having to make any payments for medical services to Defendants. (Doc. 33 at 7-11.)

Plaintiffs acknowledged at the hearing that they have not made payments on the liens to the medical providers:

> Counsel:  The representation was made to the Court that no one has paid anything to [Defendants]. That is categorically false. Plaintiff Terri Searsdodd, Progressive Insurance paid directly to the hospital expenses on her behalf. Chris Fowler, his liens have been paid in full to the hospital. Plaintiff April

The Court:  By the tortfeasor's insurance?

Counsel: Yes.

(Doc. 55 at 20-21.)

Plaintiffs seem to imply that they stand as third-party beneficiaries to the preferred provider agreements between Defendants and private health insurers, Medicare, and Medicaid. (Doc. 16 at 31.) The "exemplar" contained in the SAC supports this interpretation. BCBS insured Plaintiff Terri Searsdoodd. (Doc. 16 at 24.) Searsdodd received medical treatment from Defendants after a motor vehicle accident. *Id.* Defendants charged Searsdodd $309 for an office visit and $257 for an arm cast, for a total of $566, on April 19, 2021. *Id.* at 26. BCBS paid Defendants its preferred provider agreement rate of $176.71. *Id.*

Defendants sent a fax to the TPL claiming $3,829 in medical liens. *Id.* at 24. This total included the $566 that Defendants originally had billed Searsdodd and for which Defendants had accepted $176.71 as payment from BCBS pursuant to a preferred provider agreement. *Id.* at 27. The TPL paid Defendants on June 11, 2021. *Id.* Defendants refunded the $176.71 to BCBS on July 8, 2021. (Doc. 55 at 24.) Plaintiffs' counsel argued that Searsdodd "reasonably expected that she would receive the benefits of the insurance policy that she pays premiums for." *Id.*

### 1. Plaintiffs Covered by Private Insurance.

The Montana Supreme Court rejected similar claims for plaintiffs covered by private insurance in *Harris v. St. Vincent Healthcare*, 305 P.3d 852 (Mont.

9

2013). Two plaintiffs had been involved in separate car accidents caused by other drivers. The Billings Clinic billed the first plaintiff for medical expenses. *Harris*, 305 P.3d at 854. The first TPL remitted payment for the first plaintiff's medical expenses at the full chargemaster rates. *Id.* The second plaintiff was injured in an unrelated accident. St. Vincent Healthcare billed the second plaintiff. *Id.* The second TPL paid the full chargemaster rates for these medical services. *Id.*

Blue Cross Blue Shield of Montana (BCBS) provided health insurance for both injured plaintiffs at the time of their accidents. BCBS had entered separate preferred provider agreements with Billings Clinic and St. Vincent Healthcare. *Id.* Billings Clinic and St. Vincent Healthcare agreed to accept payment from BCBS, pursuant to the preferred provider agreements, at a discounted reimbursement rate for certain medical services provided to BCBS insureds. *Id.*

Both plaintiffs filed complaints against their medical provider for breach of contract and constructive fraud. They sought to recover damages equal to the difference between the amount that the TPL had paid to the medical provider and the reduced reimbursement rates under the preferred provider agreements with BCBS. *Id.* The district court dismissed both complaints and the Montana Supreme Court affirmed.

The medical providers had not breached the preferred provider agreements when they billed the TPLs at the full chargemaster rates for medical services

instead of the preferred provider agreements' reimbursement rates. *Harris*, 305 P.3d at 858. Like Plaintiffs here, the plaintiffs in *Harris* never alleged that they had been billed for medical services at issue or had made any payments to the medical providers. *Id. Harris* recognized that the TPLs had not been parties to the preferred provider agreements, and, therefore, were not obligated to comply with the terms of the preferred provider agreements. *Id.*

*Harris* finally rejected plaintiffs' constructive fraud claims. The medical providers had no legal duty to charge anyone other than BCBS the reduced reimbursement rates negotiated in the preferred provider agreement. *Id.*; s*ee also Cramer v. Farmers Insurance Exchange*, 423 P.3d 1067 (Mont. 2018) (concluding that Montana law authorizes non-duplication provision of insurance policy that prevents a second payment on damages for which injured party has received payment)

*Harris* relied, in part, on the Montana Supreme Court's earlier decision in *Conway v. Benefis Health Sys.*, 297 P.3d 1200 (Mont. 2013). The plaintiff in *Conway* brought a breach of contract claim against his medical provider. The plaintiff's medical costs totaled $2,073.65. *Conway*, 297 P.3d at 1202. The medical provider billed the plaintiff's private health insurer and auto insurer. *Id.* The plaintiff sought to recover the difference between the $1,866.29 for the chargemaster rates that his medical provider had accepted for payment from his

auto insurer pursuant to his medical payments coverage and the $662.74 paid under a preferred provider agreement with the health insurer. *Id.* at 1206. *Conway* rejected the notion that the plaintiff was entitled "to pocket excess medical payments." *Id.* at 1207. *Conway* also reasoned that nothing precluded the medical provider from accepting the full chargemaster rates for the medical services from the auto insurer's medical payments provision as the auto insurer was not a party to the preferred provider agreement. *Id.*

*Harris* and *Conway* admittedly involved insurances policies that contained an exclusion against double recovery. The Montana Supreme Court acknowledged that it never has "declared as a general principle that an insured may never recover duplicate payments under separate insurance policies." *Winter v. State Farm Mutual Auto Ins. Co.*, 328 P.3d 665, 672 (Mont. 2014). The plaintiff in *Winter* had purchased an auto insurance policy through State Farm and a health insurance policy from BCBS. *Id.* at 667. BCBS had paid nearly all the plaintiff's medical bills with State Farm paying the remaining $25.02. *Id.* The plaintiff sought to recover the full $15,000 in medical payment coverage that he had purchased under his State Farm policy. *Id. Winter* determined that "[b]ased on the plain language of the policy," no limitation prevented the plaintiff "from receiving a duplicate payment for medical expenses under separately purchased, uncoordinated insurance policies." *Id.* at 675.

*Winter*, too, appears to have little application here as Plaintiffs do not allege that they have been deprived of insurance coverage from a separate policy for which they paid a separate premium. Nowhere in Plaintiffs' SAC do they allege that anyone paid a separate premium for medical payments under an auto insurance policy similar to the plaintiff in *Winter*. Plaintiffs allege instead that they have been deprived of the full benefit of their single private health insurance policy. (Doc. 16 at 28-29.) *Harris* and *Conway* indicate that an insured receives the full benefit of their health insurance policy when the health insurer pays the agreed rates between the medical providers and the health insurer and leaves the insured with no further obligations to pay for the medical services. *Harris*, 305 P.3d at 858; *Conway*, 297 P.3d at 1207.

Plaintiffs concede that the TPLs at issue have paid the medical liens. (Doc. 55, at 20-21.) *Harris* and *Conway* would indicate that Plaintiffs have received the full benefit of their bargains with their health insurers. It appears that the SAC fails to state a claim for relief plausible for these privately insured Plaintiffs. *Myers*, 2015 WL 1467109, at *1 (citations omitted).

**2.  Plaintiffs Covered by Public Insurance.**

A group of Plaintiffs covered by Medicare or Medicaid for medical expenses make similar claims based on medical liens filed by the medical providers against the TPLs. The Montana Supreme Court earlier had addressed the issue of whether

a health care provider lawfully could file liens against the estate of an incapacitated person for whom it had provided medical services before accepting Medicaid payments. *Estate of Donald v. Kalispell Regional Medical Center*, 258 P.3d 395 (Mont. 2011).

The plaintiff in *Donald* suffered a traumatic brain injury from an auto accident in which he rode in the car as a passenger. *Id.* at 397. Safeco Insurance insured the driver of the plaintiff's car. *Id.* Cincinnati Insurance Company insured the driver of the other car. *Id.* The severity of the plaintiff's injuries would require lifetime care that led the state court to declare him incapacitated. *Id.* The plaintiff lacked private health insurance and the assets to pay the $227,900 bill from the medical provider. *Id.*

The plaintiff's circumstances made him eligible for Medicaid. *Id.* Medicaid expressed a willingness with the health care provider to pay $56,998.49 of the plaintiff's medical bills. *Id.* at 398. The medical provider nevertheless billed the plaintiff's estate the full amount for its services from any insurance settlement to be paid to the plaintiff's estate. *Id.* The medical provider also filed a lien in the amount of $154,839.38 with the two TPLs and the lawyers for the plaintiff's estate. *Id.*

The two TPLs settled the plaintiff's claim. *Id.* The TPLs paid some of the settlement to the plaintiff's lawyer and deposited some in a trust account to cover

the plaintiff's needs for the rest of his life. *Id.* The plaintiff's estate filed claims against the medical provider for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, negligence, and implied contract to accept Medicaid payments. *Id.* The district court granted the medical provider's motion for summary judgment. The Montana Supreme Court affirmed.

The Montana Supreme Court recognized that the plaintiff's claims related to the medical provider's insistence on billing the plaintiff's estate at its chargemaster rates for full payment of the plaintiff's medical bills instead of accepting the reduced Medicaid amount. *Id.* at 399. The court analyzed the regulations to implement Montana's Medicaid program. The court specifically looked to the regulation that requires, with limited exceptions, that "[n]o payment shall be made by the department for any medical service for which there is a known third party who has a legal liability to pay for that medical service." *Donald*, 258 P.3d at 399 (quoting Admin. R.M. 37.85.407(1)). The regulations define a third party as "an individual, institution, corporation, or public or private agency that is or may be liable to pay all of part of the cost of medical treatment" and includes "insurers . . . and parties liable or who may be liable in tort." Admin. R.M. 37.85.407(1). The regulations further required the medical provider to "bill the third party prior to billing the department." *Id.*

The Medicaid regulations required the medical provider to bill the TPLs rather than Medicaid. *Donald*, 258 P.3d at 400. The regulations allowed the medical providers to file the medical liens to collect the debt owed. *Id.* In this regard, the court recognized that Medicaid stood as a "payer of last resort" available when no other source would be liable for the expenses. *Id.* (citing *Blanton v. Dep't of Pub. HHS*, 255 P.3d 1229 (Mont. 2011)). Federal law likewise requires a state Medicaid program to "seek reimbursement" from any liable third parties. 42 U.S.C. § 1396a(a), (a)(25). The Montana Supreme Court concluded that these regulations obligated the medical provider to seek payment for its services from liable third parties or other applicable insurance coverage. *Donald*, 258 P.3d at 400.

### 3.   The Legality of Medical Liens in Other Jurisdictions.

Some variance in authority exists in other jurisdictions. Plaintiffs cite to *Morgan v. St. Luke's Hospital of Kansas City*, 403 S.W.3d 115 (Mo. Ct. Apps. 2013), to support their claim of damages from the filing of the liens. (Doc. 16, at 24.) The plaintiff in *Morgan* sought medical treatment for injuries sustained in a car accident. *Morgan*, 402 S.W.3d at 116. The plaintiff's total bill for medical treatment was $11,452.75. *Id.* The medical provider first submitted the bill to the plaintiff's health insurer who paid the bill pursuant to an agreement between the medical provider and plaintiff's health insurer. *Id.* The medical provider then

16

returned the funds to the health insurer and filed a lien against any recovery in the plaintiff's tort claim against the driver of the other car in the accident. *Id.* The medical provider filed the lien for the total chargemaster rates for services rendered with no reduction. *Id.*

The trial court dismissed the plaintiff's claims against the medical provider for failure to state a claim as Missouri law allowed the medical provider to seek the recovery. *Id.* The court of appeals reversed. The court reasoned that, according to the complaint, the contract between her health insurer and her medical provider required the medical provider to accept the discounted payments the health insurer to extinguish the plaintiff's medical debt. *Id.*  No balance remained to be paid. The court of appeals concluded that "[a] lien cannot exist in the absence of a debt, and this [plaintiff's] pleadings have stated a cause of action so as to survive a motion for judgment on the pleadings." *Id.*

By contrast, the district court in *Hoops v. Medical Reimbursements of America, Inc.*, 2018 WL 1138464, *11 (E.D. Mo. March 2, 2018), also applying Missouri law, concluded that the plaintiffs had failed to articulate any loss or damages suffered by the plaintiffs because of liens filed by medical providers. The district court squarely rejected the notion that the plaintiff stood as a third-party beneficiary to enforce the provisions of the agreement between the plaintiff's

health insurer and the plaintiff's medical provider. *Id.*; s*ee also Hayberg v. Robinson Mem. Hosp. Found.*, 995 N.E.2d 888, 894-95 (Ohio Ct. Apps. 2013).

The court in *Hayberg* determined that the patient had "failed to submit any evidentiary material showing that, in executing the underlying contract, [the hospital] and the [health insurer] specifically agreed that [the patient] would be a third-party beneficiary." *Id.* The health insurer's "payment of a discounted amount for services rendered by the hospital does not directly satisfy any separate obligation the [health insurer] owes to [the patient]." *Id.* The Ohio court recognized that the health insurer's only duty to the patient was "to pay a sum to [the hospital]." *Id.*; *see also Sykes v. Vixamar*, 830 S.E.2d 669, 673-74 (N.C. Ct. Apps. 2019) (concluding that state statute permitted medical providers to choose to rely solely on a medical lien on a future liability judgment, rather than also billing the patient's health insurer).

The balance of authority from these other jurisdictions comports with Montana law as interpreted in *Harris* and *Conway*. Plaintiffs make no effort to distinguish *Morgan* or explain why its reasoning should apply here. This Court must apply Montana law, as articulated in *Harris* and *Conway*, in this action based on diversity jurisdiction. *First Inter. Bank*, 798 F3d at 1153. Montana law does not provide a cause of action for Plaintiffs to pursue under the facts as alleged in their SAC.

**4. Plaintiffs' Claims Based on Federal Law.**

Finally, the Court must address briefly those causes of action alleged by Plaintiff that arise under federal law. Count I of Plaintiffs' SAC alleges that Defendants' filing of the medical liens and efforts to collect their full chargemaster rates from the TPLs violates the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1964 ("RICO"). (Doc. 16 at 34-39.) Count II of the SAC alleges that these same activities by Defendants violate the Fair Debt Collection Practices Act under 15 U.S.C. § 1692. (Doc. 16 at 39-45.)

To have standing under § 1964(c), Plaintiffs must show that their alleged harm qualifies as injury to their business or property and that their harm arose "by reason of" the RICO violation. This last component requires Plaintiffs to establish proximate causation. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citations omitted). Plaintiffs allege harm to their property from Defendants' filing of the medical liens and collection of the full chargemaster rates from TPLs. Montana law provides Plaintiffs no direct property interest in the difference between the negotiated rates accepted by medical providers under a preferred provider agreement and the medical providers' full chargemaster rates. *Harris*, 305 P.3d at 858; *Conway*, 297 P.3d at 1207. Plaintiffs do not stand as third-party beneficiaries to these preferred provider agreements under Montana law. *Harris*, 305 P.3d at 858; *Conway*, 297 P.3d at 1207. Plaintiffs have suffered no

injury to their property that would be cognizable under RICO. *Canyon Cnty.*, 519 F.3d at 972. Plaintiffs lack standing to bring their claim under RICO. *Id.*

Regarding Plaintiffs' claim under the Fair Debt Collection Practices Act (FDCPA), Plaintiffs' alleged violation of § 1692 stems from Defendants' actions in filing the medical liens at issue. An injury "must affect the plaintiff in a personal and individual way" to be considered "particularized." *Spokeo, Inc.*, 578 U.S. at 339. The injury "must actually exist" to be "concrete." *Id.* at 340. Plaintiffs allege specifically that "Defendants have used, and continue to use, unfair means to collect or attempt to collect medical liens in violation of 15 U.S.C. §§ 1692f and 1692f(1)." (Doc. 16 at 43.) As discussed in *Harris*, *Conway*, and *Donald*, Montana law authorizes the filing of the medical liens as part of Defendants' efforts to collect the full chargemaster rates for their medical services. Plaintiffs have alleged no injury under the FDCPA that actually exists or could be deemed "concrete." *Spokeo*, 578 U.S., at 339. Plaintiffs lack standing to challenge these medical liens under § 1692.

## CONCLUSION

Montana law establishes that Plaintiffs have suffered no cognizable harm under the terms of the preferred provider agreements between private health insurers and medical providers when the medical providers file medical liens with the TPLs to seek recovery of their full chargemaster rates. *Harris*, 305 P.3d at 858;

20

*Conway*, 297 P.3d at 1207. A court may dismiss a claim under Rule 12(b)(6) in the absence of a "cognizable legal theory." *Hubbard*, 2012 WL 2969434, at *1 (citations omitted). Montana law also excludes any claims by Plaintiffs as third-party beneficiaries under the preferred provider agreements. *Harris*, 305 P.3d at 858; *Conway*, 297 P.3d at 1207; *see also Hoops*, 2018 WL 1138464, at *11 (rejecting third-party beneficiary status); *Hayberg*, 995 N.E.2d at 894-95 (same).

Both Plaintiffs insured by private health insurers and Plaintiffs covered under Medicare or Medicaid received the full benefits of their bargains under Montana law when their private health insurers or Medicare or Medicaid relived them of any obligation to make further payments to their medical providers. And no Plaintiffs have alleged that they paid a premium for any additional medical coverage, such as coverage for medical payments under an auto policy, that potentially could provide an additional source of payments for medical bills. *See Winter*, 328 P.3d at 672.

Plaintiffs instead argued at the hearing that Plaintiffs' settlements with the TPLs included damages beyond medical bills, such as "past and future wage loss, past and future general damages, and past and future loss of services." (Doc. 55 at 22.) In other words, the settlements received by Plaintiffs from the TPLs contain finite amounts of money and the medical liens asserted by Defendants cut into the finite amounts that Plaintiffs will receive from their settlements.

Plaintiffs imply that Defendants' filing of these liens prevents them from being "made whole" for their injuries. Plaintiffs seek to be "made whole." Montana law prohibits an insurer from exercising its subrogation rights until an insured has been "made whole." *Swanson v. Hartford Ins. Co.*, 46 P.3d 584, 587 (Mont. 2002) (citations omitted). Montana law, as articulated in *Harris*, *Conway*, and *Donald*, does not prohibit, however, the filing of the medical liens that seek the full chargemaster rates as alleged in Plaintiffs' SAC. Plaintiffs have failed to allege an injury-in-fact cognizable under Montana law, and as a result, lack standing to pursue these claims. *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

## ORDER

Accordingly, **IT IS ORDERED** that Defendants Motion to Dismiss for Lack of Standing is **GRANTED**.

Dated this 24th day of May, 2022.

Brian Morris, Chief District Judge
United States District Court