## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| SHELBY NASH HUNTER, DOUGLAS DARKO, TERRI SEARSDODD, JEREMIAH DOWELL, individually and on behalf of all others similarly situated, | **CV-21-92-GF-BMM** |
| Plaintiffs, | **ORDER** |
| vs. | |
| BENEFIS HEALTH SYSTEM, INC., BENEFIS HOSPITALS, INC., BENEFIS MEDICAL GROUP, INC., KALISPELL REGIONAL MEDICAL CENTER, INC. (a/k/a "LOGAN HEALTH," KALISPELL REGIONAL HEALTHCARE"), MAGELLAN RESOURCE PARTNERS, LLC (a/k/a "MEDEQUITY," "MEDEQUITY, INC." AND "MEDEQUITY CORP."), MEDEQUITY CORPORATION, and DOES 1-50, | |
| Defendants. | |

The Court dismissed a previous amended complaint in this matter. *See* (Doc. 57.) The Ninth Circuit upheld the Court's dismissal of the Second Amended Complaint, but remanded the case to allow plaintiffs the opportunity to amend. *Blaine v. Benefis Health Sys.*, No. 22-35497, 2023 WL 5842313 (9th Cir. Sept. 11,

1

2023). Plaintiffs filed a Third Amended Complaint and Jury Demand ("TAC") on October 27, 2023. (Doc. 69.)

Plaintiffs Shelby Nash Hunter, Douglas Darko, Terri Searsdodd, and Jeremiah Dowell (together, "Plaintiffs"), on behalf of themselves and others similarly situated ("Class Members"), sue several medical service providers and medical lien companies, namely Defendants Benefis Health System, Inc., Benefis Hospitals, Inc., Benefis Medical Group, Inc. (collectively "Benefis Defendants"), Kalispell Regional Medical Center, Inc. ("Logan Health" and "Kalispell Regional Healthcare") ("KRMC"), Magellan Resource Partners, LLC ("MedEquity", "MedEquity, Inc.", and "MedEquity Corp.") ("Magellan"), and MedEquity Corporation, (collectively, "Defendants"). (*Id*.) Plaintiffs seek declaratory, injunctive, and monetary relief. (*Id*. at 18-25.)

Plaintiffs make factual allegations as to four named Plaintiffs and to putative Class Members:

- Defendants adopted a uniform practice of filing liens at chargemaster rates against the Plaintiffs and Class Members and preventing Plaintiffs and Class Members from receiving notification of the liens. (*Id*. at 9, 11.) "Plaintiffs' and Class Members' liens in the chargemaster amount do not represent the 'reasonable value of the services'" provided by medical service provider Defendants. (*Id*. at

2

11.) Defendants failed to serve liens on Plaintiffs, Class Members, or
their health insurers. (*Id*. at 11-12.)

- Plaintiff Hunter suffered injury on the real property of an at-fault
  third-party who carried property insurance with a $100,000 policy
  limit. (*Id*. at 5.) Plaintiff Hunter received medical treatment from
  Defendant KRMC. (*Id*.) KRMC engaged MedEquity to file liens
  using the "full chargemaster rate." (*Id*.) The liens totaled $233,079.45.
  (*Id*.) Defendants did not submit the claim as to Hunter's treatment to
  Hunter's health insurer. (*Id*.) Defendants' failure to submit the claims
  to Hunter's insurer resulted in medical bills totaling more than the
  policy limits of the at-fault third-party's policy insurance. (*Id*.) Hunter
  disputes the liens as to her medical services in a separate and ongoing
  Montana state court interpleader action. (*Id*. at 6.)

- Plaintiff Dowell suffered injury in a motorcycle crash with an at-fault
  third-party who carried insurance with a $300,000 policy limit. (*Id*.)
  Dowell's harms exceed $300,000. (*Id*. at 7.) Dowell received medical
  treatment from Benefis Defendants. (*Id*. at 6.) Benefis Defendants
  engaged MedEquity to file liens using the "full chargemaster rate."
  (*Id*.) The liens totaled $68,818. (*Id*.) The at-fault third-party's insurer
  withheld the amount of the MedEquity liens from at-fault third-party's

insurer's claim settlement. (*Id*. at 7.) The at-fault third-party's insurer tendered to Dowell the maximum value available under the policy except for the amount of the liens. (*Id*.)

- Plaintiff Darko suffered injury in a motor vehicle crash with an at-fault third-party. (*Id*.) Darko carried uninsured motorist insurance with a $100,000 policy limit. (*Id*.) Darko's harms exceed $100,000. (*Id*. at 8.) Darko received medical treatment from Benefis Defendants. (*Id*. at 7.) Benefis Defendants engaged MedEquity to file liens using the "full chargemaster rate." (*Id*.) The liens totaled $10,636. (*Id*.) Darko's insurer withheld the amount of the MedEquity liens from Darko's claim settlement. (*Id*. at 8.) Darko's insurer tendered to Darko the maximum value available under the policy except for the amount of the liens. (*Id*.)

- Plaintiff Searsdodd suffered injury in a motor vehicle crash with an at-fault third-party who carried insurance with a $30,000 policy limit. (*Id*. at 8.) Searsdodd carried underinsured motorist insurance with a $25,000 policy limit. (*Id*.) Searsdodd's harms exceed $55,000. (*Id*. at 9.) Searsdodd received medical treatment from Benefis Defendants. (*Id*. at 8.) Benefis Defendants then engaged MedEquity to file liens using the "full chargemaster rate." (*Id*. at 8-9.) The liens totaled

4

$4,770. (*Id.* at 9.) MedEquity filed these liens on bills which had already been paid in full. (*Id.* at 8.) Searsdodd's insurer and the at-fault third party's insurer each withheld the amount of the MedEquity liens from Searsdodd's claim settlement. (*Id.* at 9.) Searsdodd's insurer and the at-fault third party's insurer each tendered to Searsdodd the maximum value available under the respective policies except for the amount of the liens. (*Id.*)

- "Defendants' improper lien (or actions to collect on their lien) caused [Plaintiffs] financial harm by depleting [their respective] insurance coverage limits[. . .], preventing [each of them] from being made whole and recovering for the full extent of over six months of [their respective] lost wages, pain and suffering, emotional distress, and loss of established course of life. But for Defendants' unlawful lien, [Plaintiffs' respective] medical bills would not consume the entirety of [their respective] insurance proceeds and [each of them] would recover for [their respective] other losses. In addition to [their respective] financial harm, [each of them] suffered harm by the unlawful lien, the delayed and denied payment of insurance proceeds, the deceptive practices surrounding the assertion and collection on the lien, and being forced into litigation to extinguish the unlawful lien."

(*Id*. at 6, 7, 8, 9.) Defendants' actions "resulted in depleted, delayed, or entirely eliminated payments by first and third-party casualty and liability insurers to Plaintiffs and Class Members." (*Id*. at 14.)

Defendants move to dismiss the entirety of Plaintiff's TAC. (Doc. 90.) Defendants separately move to strike from Plaintiffs' TAC paragraphs 29-34, in which Plaintiffs articulate class allegations. (Doc. 93 at 2); *see* (Doc. 69 at 15-18.) Plaintiffs responded to Defendants' Motion to Dismiss by filing additional exhibits for the Court's review pursuant Fed. R. Civ. P. 12(d). The Court excludes from consideration any matter or material outside the pleadings for purposes of these motions. *See* Fed. R. Civ. P. 12(d).

## LEGAL STANDARD

A court must dismiss a claim over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12 (h)(3); Fed. R. Civ. P. 12 (b)(1). A court must dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). For purposes of a Rule 12(b)(6) challenge, a court must accept all allegations of material fact contained in the complaint as true and must construe the pleadings in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading on the

motion of a party before that party responds to the pleading. Fed. R. Civ. P.

12(f).

## DISCUSSION

Plaintiffs' first three complaints in this matter—Plaintiffs' Complaint (Doc.

1), Plaintiffs' Amended Complaint (Doc. 8), and Plaintiffs' Second Amended

Complaint (Doc. 16)—centered on allegations that Plaintiffs possessed a property

interest in the difference between negotiated rates at which medical service

providers accepted payment and "chargemaster" rates at which medical service

providers asserted liens against third-party insurers and at-fault tortfeasors. The

Court determined that Plaintiffs lacked a property interest in the difference

between such rates under Montana law and, for that and other insufficiencies in the

pleadings, failed to allege any injury-in-fact under Montana law. (Doc. 57) (citing

*Harris v. St. Vincent Healthcare*, 305 P.3d 852 (Mont. 2013), *Conway v. Benefis

Health Sys.*, 297 P.3d 1200 (Mont. 2013), and *Estate of Donald v. Kalispell

Regional Medical Center*, 258 P.3d 395 (Mont. 2011)). The Court dismissed

Plaintiffs' Second Amended Complaint with prejudice for lack of standing. (Doc.

57 at 22.)

The Ninth Circuit affirmed the dismissal. *Blaine v. Benefis Health Sys.*, No.

22-35497, 2023 WL 5842313 (9th Cir. Sept. 11, 2023) ("*Blaine*"). The Ninth

Circuit agreed with the Court's reasoning:

Despite their contentions on appeal, Plaintiffs have not alleged in their complaint that Defendants' allegedly improper liens (or actions to collect on those liens) depleted first-party insurance coverage limits, thus preventing Plaintiffs from recovering everything to which they were entitled. They have not alleged that, but for the liens, any Plaintiff would have recovered any more money through an insurance policy or any other means. They have not alleged that any tortfeasor responsible for injury to a Plaintiff paid less to any Plaintiff because of any lien. Instead, they have alleged that Defendants' practices are illegal, deceptive, and otherwise wrongful, and that as a direct consequence, third parties such as tortfeasors' insurers are paying more than they should to Defendants, and that Plaintiffs are losing the benefits of provider agreement contracts their insurers made with Defendants. These allegations do not demonstrate that any Plaintiff suffered "any concrete harm," and accordingly, Plaintiffs have not "satisf[ied] the injury-in-fact requirement of Article III." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

*Blaine* at *1. The Ninth Circuit remanded the matter with instructions to this Court to enter a dismissal without prejudice and to allow Plaintiffs to amend their complaint. *Blaine* at *2.

Plaintiffs now have filed a Third Amended Complaint. (Doc. 69.) Defendants challenge the TAC for lack of standing and for failure to state a claim. (Doc. 90.) Plaintiffs assert that they "are not seeking 'third party beneficiary' status or an entitlement to the difference between Defendants' chargemaster rates and insurance payments [. . . but] are squarely tackling an issue of first impression[.]" (Doc. 114 at 28.) Plaintiffs allege that Montana Code Annotated § 71-3-1117 ("§ 1117") permits them to challenge Defendants' medical liens as failing to represent the "reasonable value of the services" provided. (Doc. 69 at 6-19, 21-25.) Plaintiffs

seek relief based on their theory for unjust enrichment, for tortious interference with business relations, under the Montana Consumer Protection Act, and through declaratory and injunctive relief. (*Id*. at 18-25.) Plaintiffs also seek equitable monetary relief (*Id*. at 22-23) and punitive damages (*Id*. at 25). Finally, Plaintiffs challenge several sections of the Montana Code Annotated as unconstitutional under the Montana Constitution and U.S. Constitution. (*Id*. at 19-20.)

The Court first considers whether it possesses subject-matter jurisdiction over Plaintiffs' claims. A court lacks subject-matter jurisdiction over a claim brought by a plaintiff who lacks Article III standing. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A plaintiff must establish Article III standing by showing that he or she "(1) [. . .] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A court must accept all allegations of material fact contained in the complaint as true for purposes of a Rule 12(b)(1) standing challenge. *Mecinas v. Hobbs*, 30 F.4th 890, 895-96 (9th Cir. 2022).

A court must construe those allegations in the light most favorable to the nonmoving party. *Id.*

## I.      Standing to Bring Statutory and Equitable Claims

Plaintiffs lack standing to bring the claims of tortious interference with business relations, violation of the Montana Consumer Protection Act, punitive damages, or for declaratory, injunctive, or equitable relief contained in the TAC. Plaintiffs Darko, Searsdodd, and Dowell fail to allege any injury-in-fact cognizable under Montana law. Viewing Plaintiffs' factual allegations in their favor, novel theories raised in the TAC as to the applicability and effect of Montana statutes fail to support Plaintiffs' standing and remaining permutations of the "made whole" theory continue to provide no standing to Plaintiffs. *See* (Doc. 57); *see also Blaine* at *1. Plaintiff Hunter fails to allege that her injury is likely to be redressed by the Court's judicial action.

### A. Section 1117

Plaintiffs correctly point out that no Montana case cited by the Court in its Order dismissing Plaintiffs' Second Amended Complaint or cited by Defendants addressed whether § 1117 supported their claims regarding Defendants medical liens and associated conduct. (Doc. 114 at 27-28); *see* (Doc. 57) (citing *Harris v. St. Vincent Healthcare*, 305 P.3d 852 (Mont. 2013), *Conway v. Benefis Health Sys.*, 297 P.3d 1200 (Mont. 2013), and *Estate of Donald v. Kalispell Regional*

*Medical Center*, 258 P.3d 395 (Mont. 2011)). The Court does not rely on those cases to determine the justiciability of Plaintiffs' claims allegedly arising under § 1117. Those cases did not discuss § 1117 because the section did not prove relevant to the questions presented. A review of § 1117's text, legislative history, and case law shows that the section fails to support Plaintiffs' claims in this case.

### 1.    Section 1117's Language

"[S]tate law can create interests that support standing in federal courts." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)). The text of § 1117 does not support Plaintiffs' attempt to establish Article III standing. Section 1117 provides in pertinent part as follows:

> If any insurer or person, after receiving notice of a lien, *makes payment* on account of injury, disease, counseling service, or death and the amount of the lien claimed by any [medical service provider included by statute] has not been paid, the insurer or person is liable to the [medical service provider included by statute] for the reasonable value of the services.

(emphasis added). In other words, a person remains liable to a medical service provider "for the reasonable value of services" *only if* 1) a medical lien has not been paid and an insurer or a person 2) makes some payment 3) "on account of injury, disease, counseling service, or death" 4) after having received notice of the lien.

The Montana Supreme Court's sole treatment of § 1117 supports this statutory construction. In *Wyant v. Kenda*, an injured person received treatment from a chiropractor and assigned her interest in insurance proceeds to the chiropractor in the amount that the chiropractor had billed her. 102 P.3d 1260, 1261-1262 (Mont. 2004). The chiropractor filed a notice of lien with the at-fault third-party insurer for the injured person's medical expenses. *Id*. at 1261. The at-fault third-party insurer tendered a check in settlement of the injured person's claims that named the chiropractor as a payee. *Id*. at 1261-1263. *Wyant* determined that § 1117 "obligated [the at-fault third-party insurer] to pay [the chiropractor]'s bill *upon making any payment to [the injured person] for her injuries*, or face direct liability to [the chiropractor] for payment of the value of his services." *Id*. at 1262-1263 (emphasis added). The at-fault third-party insurer would not become liable to the chiropractor for the "reasonable value of services" unless and until the at-fault third-party insurer made a payment for the injured person's injuries. *See id.*

The TAC alleges no facts to support the contention that any Plaintiff or Class Member "is liable" for any dollar amount of medical services under §1117. Plaintiffs fail to plead that any Plaintiff or Class Member made any payment. *See generally* (Doc. 69.) Plaintiffs fail to plead that any such payment was "on account of injury, disease, counseling service, or death." *Id*. And Plaintiffs fail to plead that any Plaintiff made such a payment *after* having received notice of a relevant

medical lien. Section 1117 does not on its face apply to any Plaintiff or Class Member. *Id*. It does not create or reflect the existence of any "legally protected interest" in Plaintiffs or Class Members the invasion of which would constitute an injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

### 2.    Plaintiff's Lack of Contractual Interest

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). The Court accepts as true, at this stage, Plaintiffs' allegation that Defendants filed liens exceeding "the reasonable value of the services" provided. (Doc. 69 at 11.) In *Wagner v. Summit Air Ambulance, LLC*, this Court likewise credited as true at the motion to dismiss stage the plaintiffs' allegation that the defendants' charges for an air ambulance trip "exceeded the reasonable worth" of the trip. No. CV-17-57-BU-BMM, 2017 WL 4855391, at *3, 5 (D. Mont. Oct. 26, 2017). The plaintiffs' allegations in *Wagner* satisfied the requirements to survive a motion to dismiss. *Id*. at *5-6.

*Wagner* proves distinguishable. The *Wagner* plaintiffs pleaded facts to support the contention that a contract existed between plaintiffs and defendants for provision of the air ambulance service and to support the contention that the contract included no express price term. *Id*. at *1, 3. The *Wagner* plaintiffs also

claimed that Montana statutory law provided that "[w]hen a contract does not determine the amount of the consideration or the method by which it is to be ascertained or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth." *Id.* at *1 (citing Mont. Code Ann. § 28-2-813 (2017)). In addition to the factual allegation that the defendants billed the *plaintiffs* for more than the "reasonable worth" of the services provided *in violation of a contract to which plaintiffs were a party*, the plaintiffs alleged that the defendants "sought to collect from *[p]laintiffs* a balance of $40,057.38[.]" *Id.* (emphasis added). The balance that the defendants attempted to collect equaled the amount claimed by the defendants after the plaintiffs' insurer had made payment toward satisfaction of the bill. *Id.*

The *Wagner* plaintiffs possessed standing to sue the defendants for the following reasons: 1) the plaintiffs suffered a concrete, particularized, actual injury-in-fact in the form of a charge of $40,057.38 that defendants sought *from* the *plaintiffs themselves* that was 2) fairly traceable defendant's action of billing the *plaintiffs themselves* allegedly more than the implied contract price term, and that was 3) likely to be redressed by a favorable decision. Such a favorable decision could take the form of a determination by the Court that defendants had breached the contract and owed the plaintiffs monetary damages as a matter of Montana

statutory contract law. *See Friends of the Earth* at 180-81. In other words, the *Wagner* plaintiffs alleged a legal theory based on a Montana law that protected parties to a contract, alleged that they were party to a contract, alleged that defendants had violated the law, and alleged that defendants' violation caused the plaintiffs—as parties to a contract—a concrete harm. *Wagner* at *5-6.

The Court follows the same approach here. The Court takes the factual allegations contained in the TAC in this case as true. No Plaintiff or Class Member suffered a legally cognizable injury based on an alleged violation of § 1117. The Court reiterates that § 1117 does not apply to any Plaintiff or Class Member. The Court further concludes that § 1117 is not intended to protect any Plaintiff or Class Member.

### 3.    Section 1117's Legislative History

A review of § 1117's legislative history supports the conclusion that Plaintiffs cannot establish standing based on the section. First, the bill containing what became § 1117 sought to ensure that medical service providers received payment for medical services rendered. The Montana Legislature included the section in a bill entitled "An Act to Provide Liens for Physicians, Nurses, and Hospitals for Services Rendered[.]" H.R. 783, 46th Leg., Reg. Sess. (Mont. 1979). The bill's sponsor described it as a "no-fault bill for hospitals" the "purpose [of which was] to establish lien rights for physicians, nurses, and hospitals when a

person receiving medical treatment is injured through the fault or neglect of another or is insured." *Hearing on HB 783*, Mont. H. Jud. Comm., 46th Leg., Reg. Sess. (Mont. 1979); *see* Mont. Code Ann.§ 71-3-1112 ("The purpose of this section is to establish lien rights for physicians, [etc.] for services rendered and products provided when a person receiving treatment: (1) is injured through the fault or neglect of another; or (2) is either insured or a beneficiary under insurance.").

Second, the Montana Legislature focused on the *types* of monies that would be made susceptible to medical liens rather than on the amounts of any medical liens. The records of the Montana House Judiciary Committee hearing on the bill and Montana Senate Judiciary Committee consideration of the bill mention no concern that medical liens should be capped or otherwise regulated in amount in the interest of those billed for medical services. *Id.*; *Hearing on HB 783*, Mont. S. Jud. Comm., 46th Leg., Reg. Sess. (Mont. 1979). Discussion in the Montana Senate Judiciary hearing instead centered on the *type* of liability to which the bill applied (whether for injury only or also for disease) and what *type* of insurance or benefits to which the bill would apply (whether casualty insurance only or also life insurance, disability insurance, and pension plans). *Hearing on HB 783*, Mont. S. Jud. Comm., 46th Leg., Reg. Sess. (Mont. 1979).

Finally, the amendments to the bill show that the "reasonable value of the services" language sought to protect the medical service provider payee and not the recipient of care's insurer or another payor. The Montana Senate Judiciary Committee made two amendments to the bill before passing it. *Id*. The first amendment added a disclaimer exempting certain *types* of insurance and other benefits from the bill's application. *Id*. This change corresponds to the discussions recorded in the minutes of the hearing. *Id*. The Committee next struck subsection three of the House bill. *Id*. This subsection provided that "[t]he *amount of the lien* may not exceed the provisions of the schedule of fees adopted by the Montana state medical association." H.R. 783, 46th Leg., Reg. Sess. (Mont. 1979) (emphasis added). No minutes of the discussion survive as to this amendment, if any discussion occurred, but the change reflects the general legislative intent that the bill would arm medical service providers with a new and potent legal tool to collect for medical services rendered when there exists a third-party tortfeasor or insurer from which to collect. *See* Mont. Code Ann.§ 71-3-1112.

The Montana legislature could have retained language protecting those against whom a medical lien would be filed from liens of an amount exceeding a rate set by the Montana state medical association. This amount to be set by the Montana state medical association in subsection three likely would have been a reasonable rate. The Montana legislature instead specifically omitted that language

when the Montana Senate Judiciary Committee amended the House's version of the bill. The intent evinced by striking subsection three from the bill indicates that the surviving phrase "reasonable value of the services" contained in § 1117 does not address the amount of a medical lien to protect insurers or other payors from overbilling. The legislative intent behind that phrase seems to ensure that the medical service provider that issues the lien gets paid for the services rendered at a better than cut rate. The bill passed as amended. 1979 Mont. Laws Ch. 532, §§ 1-9. No later amendment indicates a change in the general legislative intent behind the relevant sections. *See, e.g.,* 2015 Mont. Laws Ch. 502, § 5 (adding "optometrist, naturopathic physician, podiatrist, ambulance service, rehabilitation facility, long-term care facility" to the list of medical service providers in § 1117).

The Court further notes the banality of legislative protections for business interests, commonly sought by industries and their lobbyists. Neither the U.S. Constitution's Due Process Clause nor the Montana Constitution's Due Process Clause expressly forbids making special rules that do not proscribe fundamental liberties that favor particular classes of people such as medical providers if there exists a rational basis for such rules. *See United States v. Comstock*, 560 U.S. 126, 151 (2010) (Kennedy, J., concurring) (citing *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-488 (1955)); *see also Hamlin Constr. & Dev. Co. Inc. v. Montana Dep't of Transportation*, 521 P.3d 9, 22 (Mont. 2022); compare *Ball v.*

18

*Gee*, 795 P.2d 82, 85 (Mont. 1990) ("before a citizen can be deprived of *property*, procedural due process guarantees that person a right to be notified and a right to be heard") (emphasis added).

### 4.    Analogy to Other Montana Lien Statutes

Plaintiffs attempt to analogize their situation to a property owner in a construction lien dispute. (Doc. 129 at 28.) The person who furnishes services or materials pursuant to a real estate improvement contract has the right under Montana law to file a lien to collect the value of the services provided as agreed in the contract. Mont. Code Ann. § 71-3-523. Plaintiffs note that a party who hires a contractor to do some remodeling in their house may disagree with the amount of a bill. Montana law specifically requires notice of the filing of the lien to the owner of the property to allow the owner to challenge the amount or validity of the lien. Mont. Code. Ann. § 71-3-534(2); *see also Blue Ridge Homes, Inc. v. Thein*, 191 P.3d 374, 383-83 (Mont. 2008) (denying property owner's challenge to lien foreclosure); *Lewistown Miller Const. Co., Inc. v. Martin*, 271 P.3d 48, 53-55 (Mont. 2011) (same).

Plaintiffs suggest that they stand before the Court in a situation similar to the party who challenges the amount of a contractor's bill as they "do not believe that these charges represent the reasonable value of the services." (Doc. 129 at 28.) The Court disagrees. Plaintiffs differ in one key aspect from the property owners in

*Blue Ridge Homes* and *Lewistown Miller Const. Co.*, Inc. The property owners in those cases had been parties to the construction contracts. *Blue Ridge Homes*, 191 P.3d at 377; *Lewistown Miller Const. Co.*, 271 P.3d at 50. None of Plaintiffs ever entered a contract with any of the medical providers named as Defendants.

The Montana Supreme Court has held that "unless he is an intended third-party beneficiary of the contract, a stranger to a contract lacks standing to bring an action for breach of that contract." *Palmer v. Bahm*, 128 P.3d 1031 (Mont. 2006) (emphasis added). The Montana Supreme Court looks to the Restatement (Second) of Contracts § 302 (1981), to determine an intended third-party beneficiary:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Harman v. MIA Service Contracts*, 858 P.2d 19, 22–23 (Mont. 1993).  The Montana Supreme Court denied standing to an alleged third-party beneficiary to a construction contract when the contract specifically excluded any third-party beneficiaries. *Dick Anderson Const., Inc. v. Monroe Const. Co., L.L.C.*, 221 P.3d 675 (Mont. 2009).

Dick Anderson Construction entered a contract with Monroe Construction for work on a property development owned by Monroe Property. *Id.*, at 685. Dick Anderson Construction filed a lien on the property owned by Monroe Property when Monroe Construction failed to pay the full contract amount. *Id.* Dick Anderson Construction and Monroe Construction submitted the dispute to an arbitration panel as required by the contract. The arbitration panel ruled largely in favor of Dick Anderson Construction and the Montana state district court confirmed the arbitration award.

The Montana Supreme Court affirmed the Montana state district court's determination that Monroe Property lacked standing to challenge the construction lien as it had not been a party to the contract. *Id.*, at 685-86. The Montana Supreme Court rejected the notion that Monroe Property possessed standing as a third-party beneficiary to the construction contract. The construction contract made no mention of Monroe Property, and the contract expressly disavowed the notion of any intent to create a third-party beneficiary status. *Id.* As a result, Monroe Property "lacked standing to challenge the construction lien when not included as a party to the contract." *Id.*

Plaintiffs entered no contracts with Defendants in this matter. Plaintiffs have identified no contracts between Defendants and any other parties that named any Plaintiff as a third-party beneficiary. Plaintiffs point to no contracts the

performance of which would satisfy an obligation of Defendants to pay money to any of the Plaintiffs or circumstances that would indicate that Defendants intended to give any of the Plaintiffs the benefit of the promised performance. And Plaintiffs note that "the TAC clarifies Plaintiffs are not seeking 'third-party beneficiary" status." (Doc. 114 at 28.) Section 1117 imposes no potential liability on Plaintiffs for the costs of medical services provided by Defendants. Plaintiffs' arguments that any injury-in-fact exists in this matter, given that Plaintiffs' § 1117 argument does not alter the standing analysis in their favor, substantially resemble the arguments that the Ninth Circuit previously found unavailing. *Blaine*, at *1.

The TAC includes allegations that "harms exceed the policy limits" for Plaintiffs Darko, Searsdodd, and Dowell, and that medical liens took a portion of available insurance proceeds and left less to pay for lost wages and other harms. (Doc. 69 at 7, 8, 9.) This argument reprises the same "made whole" theory the Court and the Ninth Circuit rejected for failure to allege injury-in-fact cognizable under Montana law. *See* (Doc. 57 at 21-22); *Blaine* at *1. Plaintiffs' TAC again fails to allege facts that show Plaintiffs Darko, Searsdodd, or Dowell suffered a "concrete" injury cognizable at law. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016); s*ee also Diaz v. Blue Cross Blue Shield of Montana*, 267 P.3d 756, 762 (Mont. 2011) (determining that insured state employees lacked standing to sue third-party administrators of state employee

health insurance program as no actions taken by the third-party administrators caused harm to the plaintiffs).

### B. Section 27-1-308(3)

Plaintiffs argue that Montana Code Annotated § 27-1-308(3) (2021) renders medical liens in the chargemaster amount "per se unreasonable." (Doc. 114 at 29-31.) Plaintiffs allege in the TAC that § 27-1-308(3) operates to preclude Plaintiffs and Class Members from "recovering from the tortfeasor the very chargemaster amount of medical expenses that Defendants seek to recover in their inflated liens." (Doc. 69 at 10.) Plaintiffs further allege that Defendants "deplete damages awarded for other harms" when they "assert[] a lien amount that always exceeds the amount Plaintiffs may recover from the tortfeasor" due to the alleged recovery limit set out by § 27-1-308(3). *Id*.

Montana law defines a collateral source for purposes of § 27-1-308 as "a payment for something that is later included in a tort award and that is made to or for the benefit of a plaintiff or is otherwise available to the plaintiff" from certain sources, such as from health insurance that provides health benefits to a plaintiff. Mont. Code Ann. § 27-1-307. The 2021 amendments to § 27-1-308 abrogated the collateral source rule. This abrogation operated to reduce a plaintiff's available recovery in bodily injury or death cases by the amount of collateral sources. Mont. Code Ann. § 27-1-308(1); *compare* Mont. Code Ann. § 27-1-308 (2020).

The version of § 27-1-308 before amendment disallowed a jury from considering collateral sources in determining the damages award in a bodily injury or death case. Mont. Code Ann. § 27-1-308(3) (2020). The previous version provided that the trial judge, at a separate hearing, would reduce the jury's award in light of collateral sources. *Id.* Section 27-1-308(3), as amended, provides evidentiary rules controlling what juries can consider to determine awards for "the reasonable value of medical services or treatment." The section disallows juries from considering "evidence [which includes] any reference to sums that exceed the amount for which the unpaid charges could be satisfied if submitted to any health insurance covering the plaintiff or any public or government-sponsored health care benefit program for which the plaintiff is eligible[.]" Mont. Code Ann. § 27-1-308(3). The amended section still permits a jury to consider other types of evidence, such as how much a plaintiff paid out of pocket for treatment. *Id.*

The amended section excludes certain types of evidence from the jury's consideration. The nature of excluded evidence reflects an apparent legislative determination that courts must limit what juries can consider on the front end to avoid a jury award that overcompensates a plaintiff. This determination arises due to the Montana legislature's abrogation of the collateral source rule. The collateral source rule no longer remains available to right-size the award on the back end. To allow otherwise, a plaintiff could show a jury a medical bill representing a debt

that could be satisfied for less if the plaintiff were to submit the charges to his or her health insurer. A jury might determine an award based off the equivalent of the chargemaster amount of the bill. This determination would allow the plaintiff potentially to pocket the difference between the amount printed on the medical bill and the amount for which that plaintiff might actually satisfy the medical debt through their health insurer.

The amendments to § 27-1-308(3) fail to indicate any legislative determination as to the reasonableness, as a matter of law, of certain rates for medical services. Plaintiffs incorrectly contend that the amendments to § 27-1-308 operate to bar any plaintiff from "recovering from the tortfeasor the very chargemaster amount of medical expenses that Defendants seek to recover in their inflated liens." (Doc. 69 at 10); *see* Mont. Code Ann. § 27-1-308(3)(a). In fact, the amendments to § 27-1-308 permit a jury to consider the circumstances of a plaintiff who was billed at the chargemaster rate and who *actually paid* the chargemaster rate out of pocket in determining the amount of an award for the reasonable value of medical services or treatment. *See* Mont. Code Ann. § 27-1-308(3)(a). The facts as pleaded in Plaintiffs' TAC do not include any such out-of-pocket payment to any Defendant.

Plaintiffs' § 27-1-308(3) theory ultimately rests again on a variation of the "made whole" argument rejected by the Ninth Circuit and fails to support

Plaintiffs' standing. Like § 1117, § 27-1-308(3) provides no cause of action for Plaintiffs. Section 27-1-308(3) merely provides a rule of evidence. *See* Mont. Code Ann. Title 27, Chapter 1, Part 3 subtitle ("Measure of Damages"). Plaintiffs fail to allege any injury-in-fact cognizable under § 27-1-308(3). *See Friends of the Earth* at 180. Plaintiffs do not allege facts to support the contention that such an injury arising out of § 27-1-308(3) would be traceable to *Defendants'* actions, as opposed to the actions of the Montana legislature or a particular jury. *Id.*

### C. Plaintiff Hunter

The standing analysis as to Plaintiff Hunter differs slightly from the analysis as to the other three named Plaintiffs. The TAC pleads injury-in-fact as to Plaintiff Hunter when the Court takes allegations of material fact contained in the complaint as true and construes the TAC in the light most favorable to Plaintiffs. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Plaintiffs allege that Defendant KRMC filed liens by Defendant MedEquity for $233,079.45 and that the at-fault third party property insurance available to Plaintiff Hunter has a $100,000 limit. (Doc. 69 at 5-6.) The liens, in other words, would exhaust the entirety of the policy.

The TAC lacks allegations, however, that it is "likely, as opposed to merely speculative, that [Plaintiff Hunter's] injury will be redressed by a favorable decision" by this Court. *Friends of the Earth* at 181. As a procedural matter, a final

resolution of Plaintiff Hunter's claims likely cannot occur until action by a separate court of a separate sovereign because, as the TAC claims, "the property insurer interpleaded the $100,000 policy limits to the Montana Eleventh Judicial District Court where it remains." (Doc. 69 at 6.) Moreover, Plaintiffs failed to include in the TAC any allegation that any remedy this Court could issue likely would reduce the liens to an amount below $100,000. *See generally* (Doc. 69.) The TAC claims that "[b]ut for Defendants' unlawful lien, Hunter's medical bills would not consume the entirety of her insurance proceeds and she would recover for her other losses[.]" (Doc. 69 at 6.) Nowhere does the TAC claim that a "lawful" lien would put Plaintiff Hunter in a better financial position. *Id*. Notwithstanding the Court's finding that § 1117 does not support Plaintiffs' standing, even a lien for "the reasonable value of services" may exceed $100,000.

## II.   Standing to Bring Constitutional Claims

Plaintiffs also fail to establish standing as to their claims under the Montana Constitution or U.S. Constitution. Plaintiffs argue that the unavailability of a mechanism for Plaintiffs to challenge Defendants' liens under § 1117 causes a violation of Plaintiffs' due process rights. (Doc. 69 at 16-17, 19-20.) Plaintiffs' TAC also alleges that Mont. Code Ann. § 33-1-110 violates Plaintiffs' rights under the Equal Protection Clause. (Doc. 69 at 17, 20.)

"Article III standing must be determined as a threshold matter in every federal case[.]" *United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1191 (9th Cir. 2004). Plaintiffs possess no due process right to challenge a statute in federal court unless Plaintiffs possess Article III standing to challenge the same. *See id.* Plaintiffs' TAC claims that Mont. Code Ann. § 71-3-1111, et seq., lacks "notice or fair procedures to safeguard Plaintiffs' property interests." (Doc. 69 at 19-20.)

A review of a recent case addressing a Due Process Clause challenge to a separate Montana lien statute highlights the issue. In *Cox v. Yellowstone County*, the owner of a mobile home claimed that a Montana county violated his due process rights under the U.S. Constitution by selling his mobile home pursuant Montana's agister's lien statute. *Cox v. Yellowstone Cnty.*, 795 F. Supp. 2d 1128, 1130-32 (D. Mont. 2011). The district court noted that the agister's lien statute forced the property owner to be "confronted with a property deprivation solely upon the *ex parte* application of a private party, without an opportunity for the property owner to be heard prior to the deprivation." *Id.*, at 1140. The plaintiff alleged that the defendants' actions in conducting the sale without the chance to object "injured him because it prevented him from fulfilling his contract for deed" through his eventual sale of the mobile home. *Cox* at 1131.

28

No party disputed that the plaintiff possessed a property interest in the mobile home or that the forced sale deprived the plaintiff of his property interest. *Cox* at 1136. The district court denied the defendant's motion for summary judgment and found that the defendant county "ha[d] not shown that there are no additional or alternative safeguards available to minimize the risk of an erroneous deprivation of property." *Cox* at 1142. The district court's reasoning hinged on the fact that the plaintiff possessed a "significant property interest" in his mobile home. *Cox* at 1137-38.

Inherent in the district court's consideration of the merits in *Cox* exists an implied standing determination. The plaintiff in *Cox* suffered a concrete, particularized, and actual injury cognizable under Montana law, in the form of the deprivation of his right to sell the mobile home that he owned and receive the proceeds of the sale. *Cox* at 1132; *see Friends of the Earth* at 180. The deprivation of plaintiff's property right proved fairly traceable to the defendant's action of selling the mobile home in a way that allegedly failed to comport with the U.S. Constitution. *Cox* at 1132; *see Friends of the Earth* at 180. Finally, a favorable judicial decision likely would have redressed the plaintiff's injury by determining the plaintiff's legal rights as against the county, such as by requiring the county to pay to the plaintiff the proceeds from the sale of plaintiff's mobile home. *Cox* at 1132; *see Friends of the Earth* at 181.

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Three of four Plaintiffs' previously noted failure to allege that they suffered an injury-in-fact provides an independent basis for finding that those Plaintiffs lack standing as to their constitutional claims. Plaintiffs allege no facts to support the contention that they possess any property right under Montana law in the difference between the chargemaster rates of liens and what Plaintiffs' insurers or third-party tortfeasors paid. *See* (Doc. 114 at 28) ("Plaintiffs are not seeking 'third party beneficiary' status or an entitlement to the difference between Defendants' chargemaster rates and insurance payments"). As for Plaintiff Hunter, Plaintiffs fail to show that her injury is "fairly traceable" to any constitutional violation by Defendants, *Friends of the Earth* at 180, or that a favorable decision as to Plaintiffs' constitutional claims would redress her injury, *Friends of the Earth* at 181.

Plaintiffs argue that Mont. Code Ann. § 33-1-110(1) "has nothing to do with liens and does not bar Plaintiffs' claims [but that i]n the event § 33-1-110(1), MCA, is applied to prevent Plaintiffs from challenging their liens under § 71-3-1117, MCA, then it is an unconstitutional deprivation of Plaintiffs' equal protection rights." (Doc. 114 at 31-32.) Montana Code Annotated § 33-1-110(1)

provides that a health care provider that enters into a provider agreement with a health care insurer, for example, need not accept payment for services at a discount provider agreement rate when the payment for services "is made directly or indirectly or is otherwise required to be made [. . .] under casualty insurance as described in [another section, or] under property insurance as described in [another section.]" The Court does not apply § 33-1-110 to prevent Plaintiffs from mounting a challenge to Defendants' liens under § 1117. *See above* "I. A. Section 1117." Plaintiff's argument that § 33-1-110(1) violates Plaintiffs' equal protection rights fails on its own terms as a result. Plaintiffs' equal protection claim also cannot proceed as Plaintiffs' complaint cannot support a finding of injury-in-fact caused by Defendants that is judicially redressable in relation to the claim. *Allen v. Wright*, 468 U.S. 737, 756–57 (1984), *abrogated on other ground by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

## III.   Unjust Enrichment

The Ninth Circuit addressed in *In re Facebook, Inc. Internet Tracking Litig.* whether a California law recognizing plaintiffs' property interest in unjustly earned profits gave rise to Article III standing. 956 F.3d 589, 600. The Ninth Circuit concluded that California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *Id.* California law draws from the Restatement (First) of

Restitution § 1 for the proposition that "where a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss, or in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust . . . [t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched." *Cty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007) (upholding trial court's award of unjust enrichment damages to a county in the amount that contractors who received a county contract by bribing a county official had profited from the contract).

In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend their own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable. *In re Facebook, Inc. Internet Tracking Litig.* at 600 (citing *CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860-61 (2006) (holding that under California law a woman whose identity was stolen and used to obtain later-foreclosed-upon property "was entitled to the product of identity theft," namely surplus funds from the sale).

The Court assumes, *arguendo*, that Plaintiffs possess a similar interest under Montana law in the dollar amount of medical liens. *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 344–45 (2016)*, as revised* (May 24, 2016) (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action—such as for

trespass, infringement of intellectual property, and unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right"). Montana law no longer requires that a plaintiff allege bad acts or wrongdoing on the part of the defendant to bring a claim for unjust enrichment. *Northern Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great Falls/Billings*. 296 P.3d 450, 457 (Mont. 2013).

Plaintiffs seek the remedy of the imposition of "a constructive trust over funds in Defendants' possession that are determined to be improper." (Doc. 69 at 23.) Plaintiffs nevertheless fail to state a claim for unjust enrichment upon which relief can be granted. *See* Fed. R. Civ. P 12(b)(6). "A claim for unjust enrichment, in the context of a constructive trust, requires proof of three elements: (1) a benefit conferred upon a defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value." *Volk v. Goeser*, 367 P.3d 378, 389 (Mont. 2016). Plaintiffs allege in their TAC that "[i]t is inequitable for Defendants to retain payments on liens that do not represent the 'reasonable value of the services' required by § 71-3-1117, MCA." (Doc. 69 at 23.)

Plaintiffs' assertion that retention of payments "on liens that do not *represent the 'reasonable value of the services' required by § 71-3-1117*" renders

such retention inequitable depends on the legal conclusion that § 1117 "require[s]" that medical liens represent the "reasonable value of services." *See* (Doc. 69 at 23.) As detailed above, § 1117 sets no statutory maximum amount at which a party may assert a medical lien. The statutory text of § 1117, as well as its legislative history, show that it operates to protect medical service providers *not payors or parties subject to liens for medical services*. Section 1117 does not require that medical liens represent the reasonable value of services. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' allegation that "[i]t is inequitable for Defendants to retain payments on liens that do not represent the 'reasonable value of the services' required by § 71-3-1117, MCA" includes a "legal conclusion couched as a factual allegation" and does not warrant the assumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations remaining in the TAC, if proved, would fail to satisfy the third element of unjust enrichment under Montana law: that Defendants accepted or retained payments on liens under circumstances "that would make it inequitable for the defendant to retain the benefit without payment of its value." *Volk* at 389. The Court notes that Plaintiffs offered no response to Defendants' argument that Plaintiffs fail to state a claim for

34

unjust enrichment. *See* L.R. 7.1(d)(1)(B)(ii); *see also* (Doc. 91 at 28-29); (Doc. 114).

## IV.    Class Allegations

At least one named plaintiff in a class action must have standing as to each claim alleged. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1046 (N.D. Cal. 2022) (citing *Ollier v. Sweetwater Union High Dist.*, 768 F.3d 843, 865 (9th Cir. 2014)). None of Plaintiffs in this case appear to have standing as to claims other than Plaintiff Hunter's potential standing to pursue an unjust enrichment claim. As noted, however, Plaintiff Hunter's unjust enrichment claim cannot survive a 12(b)(6) challenge. The Court declines to reach issues as to the propriety of the class allegations contained in the TAC because the Court lacks subject-matter jurisdiction as to Class Member remaining claims considering Plaintiffs' lack of standing.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Benefis Defendants' Motion to Dismiss the Third Amended Complaint (Doc. 90) is **GRANTED**.

2. Plaintiffs' Third Amended Complaint (Doc. 69) is **DISMISSED** without prejudice.

3. Benefis Defendants' Motion to Strike Class Allegations (Doc. 93) is **DENIED as moot**.

    4.  The Clerk of Court is directed to close this case.

**DATED** this 16th day of February, 2024.

_____
Brian Morris, Chief District Judge
United States District Court